ORIGINAL  # 553153

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY M. RITTEN, M.D.,

      Plaintiff,

-vs-

LAPEER REGIONAL MEDICAL CENTER,
d/b/a LAPEER GENERAL HOSPITAL
and LAPEER REGIONAL HOSPITAL,
McLAREN HEALTH CARE CORPORATION,
BARTON P. BUXTON, DARLENE F. DALY, D.O.,
LISA M. ALLEN, D.O., JAN GROMADA, D.O.,
and SCOTT MANGO, R.N., jointly and severally,

      Defendants.

_____/

Case: 2:07-cv-10265
Assigned To: Rosen, Gerald E
Referral Judge: Scheer, Donald A
Filed: 01-17-2007 At 10:36 AM
CMP RITTEN V. LAPEER REGIONAL MEDIC
AL CENTER ET AL (SMS)

Barry S. Fagan (P34275)
Darcie R. Brault (P43864)
DIB, FAGAN AND BRAULT, P.C.
Attorneys for Plaintiff
25892 Woodward Avenue
Royal Oak, MI 48067-0910
(248) 542-6300

Geoffrey N. Feiger (P30441)
Jeffrey A. Danzig (P36571)
FIEGER FIEGER KENNEY & JOHNSON, P.C.
Attorneys for Plaintiff
19390 W. 10 mile Road
Southfield, MI 48075
(248) 355-5555

_____/

## COMPLAINT AND JURY DEMAND

      NOW COMES Plaintiff, Gary M. Ritten, M.D., by and through his

attorneys, DIB, FAGAN AND BRAULT, P.C., and FIEGER, FIEGER, KENNEY & JOHNSON,

P.C. and for his cause of action against the Defendants, jointly and severally, states as follows:

## **COMMON ALLEGATIONS**

1.    Plaintiff, Gary M. Ritten, M.D. is a resident of the County of Lapeer, State of Michigan.

2.    Defendant, Lapeer Regional Medical Center, d/b/a Lapeer General Hospital and Lapeer Regional Hospital (hereinafter "Lapeer Regional") is a Michigan non-profit corporation doing business in the County of Lapeer, State of Michigan and is a wholly owned subsidiary of McLaren Health Care Corporation.

3.    Defendant, McLaren Health Care Corporation (hereinafter "McLaren") is a Michigan non-profit corporation and owns and operates Defendant Lapeer Regional.

4.    Defendant McLaren is vicariously liable for the unlawful conduct of Lapeer Regional pursuant to the doctrine of respondeat superior.

5.    Defendant Barton P. Buxton is the President and Chief Executive Officer of Lapeer Regional.

6.    Defendant Buxton is also a member of the Board of Directors of Defendant McLaren.

7.    Defendant Scott Mango, R.N. is the Chief Nursing Officer for Lapeer Regional.

2

8.      Defendant Lisa M. Allen, D.O. is licensed to practice medicine in the State of Michigan and practices the specialty of obstetrics and gynecology in Lapeer County with staff privileges at Lapeer Regional.

9.      Defendant Darlene F. Daly, D.O. is licensed to practice medicine in the State of Michigan and practices the specialty of obstetrics and gynecology in Lapeer County with staff privileges at Lapeer Regional.

10.     Defendant Jan C. Gramada, D.O. is licensed to practice medicine in the State of Michigan and practices the specialty of obstetrics and gynecology in Lapeer County with staff privileges at Lapeer Regional.

11.     This court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 (federal question), 42 U.S.C. §1395dd, 15 U.S.C. §1 and 2 (the Sherman Anti-Trust Act), and 28 U.S.C. §1367 (supplemental).

12.     The amount in controversy is in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest, costs, and attorney fees.

## **GENERAL ALLEGATIONS**

13.     Plaintiff incorporates herein paragraphs 1 through 12 above as if specifically repeated herein.

14.     Plaintiff is licensed to practice medicine in the State of Michigan and at all relevant times was certified in the specialty of obstetrics and gynecology.

3

15.     Plaintiff was appointed to the medical staff at Lapeer Regional on August 17, 1999 and re-appointed on September 18, 2001 and September 16, 2003.

16.     Prior to the wrongful acts alleged herein, Plaintiff provided the following product to the relevant market: obstetrical and gynecological medical services.

17.     Prior to the wrongful acts alleged herein, Plaintiff provided obstetrical and gynecological services in the following geographic market: Lapeer County and parts of Tuscola, Sanilac, and Genesee counties.

18.     The relevant geographic market is primarily rural in nature, in particular in the northeast portion.

19.     Staff privileges at a hospital within the geographic market were and are essential to the provision of obstetrical and gynecological medical services of the type Plaintiff provided.

20.     Plaintiff competed with other physicians who offer obstetrical and gynecological medical services in the above-defined geographic market.

21.     Defendants, Daly, Allen, and Gromada predominated the relevant markets.

22.     After Plaintiff obtained staff privileges at Lapeer Regional, he developed and expanded his practice in the area.

23.     Over time it became apparent that he was viewed as a business threat by Defendants, Daly, Allen, and Gromada.

4

24.    Throughout his tenure as a staff physician at Lapeer Regional, Defendant Daly engaged in a campaign to discredit Plaintiff with the administration of the hospital by constantly reviewing Plaintiff's cases, without basis, and submitting numerous bogus quality incident reports regarding Plaintiff's care of his patients and encouraging certain nurses to do the same.

25.    At various times during Plaintiff's tenure with the Lapeer Regional, Defendant Daly held certain administrative positions, including Chief of Obstetrics and Gynecology and Chief of Staff.

26.    Plaintiff raised concerns with Defendant Buxton regarding Defendant Daly, including her inability to review his cases in an objective and fair manner and a concern that if she were appointed Chief of Staff she would use such power to inflict harm upon Plaintiff by raising alleged quality issues with regard to Plaintiff's care and treatment of patients without basis.

27.    During the time period that Plaintiff had staff privileges with Defendant Lapeer Regional, the hospital had a policy against performing abortions at the hospital.

28.    On at least three separate occasions, Defendant Lapeer Regional interfered with Plaintiff's management of his patients who presented to the hospital with an emergency medical condition and attempted to force a transfer of a patient in an unstable condition.

29.    Specifically, on May 6, 2004, a patient with a 34-week pregnancy arrived at the hospital with severe preeclampsia and was dilated to 4 centimeters.  Plaintiff made the decision to treat and manage the patient at Defendant Lapeer Regional due to advanced dilation and the severity of her preeclampsia, thus making her unstable to transfer.

30.    Defendant Daly, without basis, made herself familiar with the patient and contacted Defendant Buxton in an attempt to force a transfer of the unstable patient to a different hospital.

31.    On June 29, 2004, a patient with a 21-week pregnancy and an inevitable miscarriage presented to the hospital.  As a result of the patient exhibiting signs of infection, Plaintiff made a decision to induce labor. Defendant Daly, without basis, became involved in the case and contacted hospital administration demanding that the patient be transferred to a different hospital.  Plaintiff objected to the transfer of the patient as she presented with an emergency medical condition and was unstable for transfer. Only after Plaintiff consulted with Dr. Back, Hospital Chief of Staff, was Plaintiff able to continue the management of the patient at Lapeer Regional.

32.    On August 8, 2005, Plaintiff was presented with a patient with a 20-week pregnancy with ruptured membranes and who was fully dilated. Given the fact the patient's cervix was fully dilated, miscarriage was inevitable.

6

33.     Under the circumstances, including the fact that the patient presented with an emergency medical condition and was unstable for transfer, Plaintiff determined that the appropriate course of action was to manage the patient at Defendant Lapeer Regional.

34.     Defendant Mango became involved in the case; claiming that Plaintiff was performing an abortion and, without basis, requested a consult on the patient by Defendant Allen, who at the time was the Chief of Obstetrics and Gynecology at Lapeer Regional.

35.     Defendant Buxton became involved in Plaintiff's management of the case and demanded that the patient be transferred to Hurley Hospital. Plaintiff objected to the transfer as the patient was unstable and felt that transferring the patient outside the hospital would be considered "dumping."

36.     Defendant Buxton directed Plaintiff to "get her out of the hospital" or he could "lose his job."

37.     At Defendant Buxton's direction, Plaintiff contacted Hurley Hospital, located in Flint, Michigan and was told that they would not accept a patient at 20-weeks gestation in the condition described.

38.     Defendant Buxton also contacted Hurley Hospital requesting that they accept the patient and was told that the patient would not be accepted.

39.     Subsequently, Plaintiff continued to manage the patient at Defendant Lapeer Regional and the baby was delivered and shortly thereafter died.

40. On September 2, 2005 Plaintiff was informed by Defendant Buxton that he had decided to summarily suspend Plaintiff's clinical privileges at Lapeer Regional because allegedly Plaintiff's "obstetrical practice at Lapeer Regional Medical Center poses a substantial likelihood of immediate injury to the health of patients."

41. Pursuant to the medical staff bylaws of the hospital, a meeting of the Medical Executive Committee of the hospital was held on September 6, 2005, to discuss the summary suspension.

42. At the meeting of the Medical Executive Committee, Defendant Buxton, relying upon numerous quality incident reports initiated primarily by Defendant Daly going back to the beginning of Plaintiff's staff privileges as well as the August 8, 2005 20-week pregnancy case, claiming that Plaintiff's care of the patient had resulted in "fetal demise," stated that he "had no choice but to invoke a summary suspension."

43. At the Medical Executive Committee meeting, the Committee, comprised of all physicians, voted unanimously to immediately rescind the summary suspension of Plaintiff and reinstate his clinical privileges.

44. Although all of Plaintiff's vacuum deliveries were good outcomes, the Medical Executive Committee, in order to allay any concerns raised by Defendant Buxton regarding vacuum deliveries, advised that a preceptor supervise Plaintiff's vaginal operative deliveries until the cases raised by

8

Defendant Buxton were reviewed by consultants recommended by the American College of Obstetricians and Gynecologists.

45. Subsequently, Defendant Daly, as Chief of Staff, and Defendant Buxton, expanded the decision of the Medical Executive Committee to require supervision by Defendant Gromada of "all of your operative deliveries, including cesarean sections, and instrument assisted deliveries ..."

46. On September 9, 2005 a special meeting of the Board of Trustees of Defendant Lapeer Regional was held to review the decision of the Medical Executive Committee. Members of the Board present included Defendant Buxton and Defendant Daly. At the meeting Defendant Daly and Defendant Mango, provided false information regarding Plaintiff's care of patients with knowledge of its falsity or with reckless disregard of the truth or falsity of the information provided. Defendant Buxton also retained the services of so-called expert, Thomas Petroff, D.O., an agent, servant, and/or employee of Defendant McLaren, to attempt to support his malicious allegations toward Plaintiff.

47. At the meeting of the Board of Trustees, based upon the information provided that was false and provided with knowledge that it was false or in reckless disregard for the truth or falsity of the information, the Board of Trustees, with Defendant Daly abstaining, determined that Plaintiff's practice "poses too much risk to patients." As a result, the Board

9

voted to "suspend all of your clinical privileges at the Medical Center, effective immediately."

48. As a result of the adverse action by the Board of Trustees, Plaintiff requested a hearing regarding the decision to suspend his clinical privileges pursuant to the medical staff bylaws.

49. The Peer Review hearing process commenced on November 1, 2005 and continued for 11 sessions through June 7, 2006.

50. On January 20, 2006, a letter was submitted by Defendants Allen, Daly and Gromada to Gunda Reddy, M.D., Chief of Staff at the hospital voicing concerns regarding Plaintiff's care of patients since suspension of his privileges, including an allegation that (1) "There have been several cases of substandard prenatal care rendered by Dr. Ritten in high risk obstetrical patients." (2) Dr. Ritten has failed to provide complete and legible prenatal records for the care of his patients. and (3) That Dr. Ritten has made detrimental comments regarding "his current situation and the physicians who are now caring for his patients." (Letter, **EXHIBIT A**). The letter was copied to Defendant Buxton and the members of the Medical Executive Committee and ultimately was published to the individuals conducting Plaintiff's Peer Review hearing and the Board of Trustees.

51. The statements made by Defendants Allen, Daly, and Gromada were false and Defendants provided the information knowing it was false or in reckless disregard for the truth or falsity of the information.

10

52.     On July 18, 2006 the hearing committee, by a majority vote, confirmed and supported the Lapeer Regional Medical Center Board of Trustee's decision to suspend Plaintiff's staff privileges. The vote of the Committee was 3 to 2 in favor of confirming the suspension, with the 2 physician members of the Committee voting in favor of Plaintiff.

53.     Plaintiff subsequently filed an appeal of the decision to the Board of Trustee's of Defendant Lapeer Regional.

54.     On August 23, 2006, Plaintiff was informed that the Appellate Review Committee of the Board of Trustees recommended that the Board affirm the decision of the Hearing Committee.

55.     Subsequently, Plaintiff was informed that the Board of Trustee's voted to continue permanently the suspension of Plaintiff's staff privileges.

56.     On or about October 17, 2006 Lapeer Regional provided information regarding the suspension of Plaintiff's clinical privileges to the National Practitioner Data Bank. The information provided was false and Defendant Lapeer Regional knew the information was false or provided it in reckless disregard for the truth or falsity of the information.

## COUNT I
## VIOLATION OF 42 U.S.C. §1395dd-EXAMINATION AND TREATMENT FOR EMERGENCY MEDICAL CONDITIONS AND WOMEN IN LABOR

57.     Plaintiff incorporates herein paragraphs 1 through 56 above as if specifically repeated herein.

11

58. At all times pertinent hereto, Defendant, Lapeer Regional, was a participating hospital, according to 42 U.S.C. §1395cc, and said hospital, as well as its agents and employees, were obligated by law to fully comply with the provisions thereof.

59. 42 U.S.C. §1395dd (i) prohibits a participating hospital from penalizing or taking adverse action against a physician, because the physician refuses to authorize the transfer of an individual with an emergency medical condition that has not been stabilized.

60. Pursuant to 42 U.S.C. §1395dd (d)(2)(A), any individual who suffers personal harm as a result of the hospital violation of the statute may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the state in which the hospital is located, and such equitable relief as appropriate.

61. Pursuant to 42 U.S.C. §1395dd (e)(i) "the term 'emergency medical condition' means- -:

"(B) with respect to a pregnant woman who is having contractions- -
 (i) that there is inadequate time to affect a safe transfer to another hospital before delivery, or
 (ii) the transfer may pose a threat to the health or safety of the woman or the unborn child."

62. With regard to the August 8, 2005 patient that was 20-weeks pregnant as well as the cases on May 6, 2004 and June 29, 2004, referenced in the general allegations of this Complaint, the patients presented with an "emergency medical condition" as defined pursuant to 42 U.S.C. §1395dd

12

(e)(i)(B) and Plaintiff refused to authorize the transfer of the patient, because they had not been stabilized.

63. Defendant Lapeer Regional penalized and took adverse action against Plaintiff as a result of his refusal to authorize the transfer of the patient's identified by summarily suspending his privileges and ultimately deciding to permanently suspend his privileges.

64. As a direct and proximate result of Defendant Lapeer Regional's unlawful conduct in violation of the Whistleblower Protections of 42 U.S.C. §1395dd, Plaintiff has sustained and will in the future continue to sustain substantial economic and non-economic damages including, but not limited to:

a. The loss of Plaintiff's staff privileges and medical practice, resulting in substantial loss of earnings, past and future;

b. Substantial economic losses in defending himself from the actions of Defendant Lapeer Regional, including the payment of attorney fees;

c. Extreme embarrassment, humiliation, inconvenience, extreme mental anguish, outrage and indignity;

d. Other damages permitted by law to make Plaintiff whole;

65. Plaintiff is also seeking appropriate equitable relief, including reinstatement of his staff privileges at Defendant Lapeer Regional.

WHEREFORE, Plaintiff prays for Judgment against Defendant, Lapeer and Defendant McLaren, jointly and severally, for whatever amount the Court or jury determines to be fair, just, and adequate compensation for the

injuries and damages sustained, along with interest, costs, and an award of attorney fees. Plaintiff is also seeking appropriate equitable relief.

## COUNT II
## TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS WITH PLAINTIFF'S PATIENTS

66.     Plaintiff incorporates herein paragraphs 1 through 65 above as if specifically repeated herein.

67.     Plaintiff had a business relationship with patients he admitted to Lapeer Regional for obstetrical and/or gynecological treatment after obtaining staff privileges at said hospital, and had an expectation of a business relationship with future patients.

68.     The business relationship Plaintiff had with his patients and expectation of a business relationship with future patients had a reasonable likelihood of future economic benefit to Plaintiff.

69.     Defendants, Lapeer Regional, Barton Buxton, Scott Mango, Darlene F. Daly, Lisa M. Allen, and Jan Gromada knew of the business relationship Plaintiff had with the patients he admitted to Lapeer Regional and his expectation of a business relationship with future patients.

70.     Defendants intentionally, unlawfully, and maliciously interfered with Plaintiff's advantageous business relationships as set forth in the General Allegations of this complaint and his expectation of a business relationship with future patients and caused Plaintiff's patients to disrupt or terminate the relationship with Plaintiff.

14

71. Defendants Lapeer Regional and McLaren are vicariously liable for the tortious interference by Defendants Buxton, Mango, Daly, Allen, and Gromada pursuant to the doctrine of respondeat superior.

72. As a direct and proximate result of Defendants' tortious interference with Plaintiff's advantageous business relationships with his patients and future patients, Plaintiff has suffered substantial economic and non-economic injuries and damages, past and future, including, but not limited to:

        a.    The loss of his staff privileges and his medical practice, resulting in a substantial loss of earnings, past and future;

        b.    Loss of goodwill and permanent damage to his professional reputation;

        c.    Extreme embarrassment, humiliation, inconvenience, extreme mental anguish, outrage and indignity;

        d.    Exemplary damages;

        e.    All other damages permitted by law to make Plaintiff whole;

WHEREFORE, Plaintiff prays for Judgment against Defendants, jointly and severally, in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, along with interest, costs, and attorney fees.

## COUNT III
## TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP WITH LAPEER REGIONAL

73.    Plaintiff incorporates herein paragraphs 1 through 72 above as if specifically repeated herein.

74.    Plaintiff had a business relationship with Lapeer.

75.    The business relationship had a reasonable likelihood of future economic benefit to Plaintiff.

76.    Defendants Buxton, Mango, Daly, Allen, and Gromada knew of the business relationship that Plaintiff had with Defendant Lapeer Regional.

77.    Defendants intentionally, unlawfully, and maliciously interfered with Plaintiff's business relationship with Defendant Lapeer Regional, as set forth in the General Allegations of this Complaint.

78.    Defendants' conduct caused Lapeer to terminate its business relationship with Plaintiff.

79.    As a direct and proximate result of Defendants' tortious interference with Plaintiff's advantageous business relationship with Lapeer Regional, Plaintiff has suffered substantial economic and non-economic injuries and damages, past and future, including but not limited to:

      a.    The loss of his staff privileges and his medical practice, resulting in a substantial loss of earnings, past and future;

      b.    Loss of goodwill and permanent harm to his professional reputation;

      c.    Extreme embarrassment, humiliation, inconvenience, extreme mental anguish, outrage and indignity;

> d.    Exemplary damages;
>
> e.    All other damages permitted by law to make Plaintiff whole;

WHEREFORE, Plaintiff prays for Judgment against Defendants, Buxton, Mango, Daly, Allen and Gromada, jointly and severally, in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, along with interest, costs, and attorney fees.

## COUNT IV
## DEFAMATION

80.    Plaintiff incorporates herein paragraphs 1 through 79 above as if specifically repeated herein.

81.    Defendants, Allen, Daly, and Gromada in the January 20, 2006 letter attached to this Complaint as **EXHIBIT A** made false and defamatory statements about Plaintiff.

82.    The defamatory statements were made with knowledge of their falsity or with reckless disregard of their truth or falsity.

83.    The defamatory statements as set forth in **EXHIBIT A** are defamatory per se or per quod.

84.    Plaintiff has demanded a retraction of the defamatory comments by Defendants and Defendants have failed to do so.

17

85.     Pursuant to MCL 600.2911, Plaintiff is entitled to recover the following damages suffered as a direct and proximate result of Defendants' defamatory statements regarding Plaintiff, including, but not limited to:

      a.    Economic losses, past and future, resulting from the loss of his staff privileges and his medical practice;

      b.    Loss of goodwill and permanent harm to his professional reputation;

      c.    Extreme embarrassment, humiliation, inconvenience, extreme mental anguish, outrage and indignity;

      d.    Exemplary damages;

      e.    Punitive damages;

      f.    All other damages permitted by law to make Plaintiff whole;

WHEREFORE, Plaintiff prays for Judgment against Defendants, Daly, Allen, and Gromada, jointly and severally, in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, along with interest, costs, and attorney fees.

## COUNT V
## VIOLATION OF THE SHERMAN ANTI-TRUST ACT

86.     Plaintiff incorporates herein paragraphs 1 through 85 above as if specifically repeated herein.

87.     Defendants Daly, Allen, and Gromada violated 15 USCS §1 by combining to restrain trade affecting inter-state commerce.

18

88.     Defendants Daly, Allen, and Gromada have violated 15 U.S.C. §

2: "Every person who shall monopolize, or attempt to monopolize, or

combine or conspire with any other person or persons, to monopolize any

part of the trade or commerce among the several States, or with foreign

nations" has violated the law.

89.     Defendants Daly, Allen, and Gromada acted together to:

a.      Make untrue and defamatory statements regarding Plaintiff
        Ritten to the Hospital Executive Board and the Hospital
        CEO for the purpose of influencing the Hospital to revoke
        Plaintiff Ritten's hospital staff privileges;

b.      Provide false information to the Hospital Executive Board
        and the Hospital CEO for the purposes of influencing the
        Hospital to revoke Plaintiff Ritten's hospital staff privileges;

c.      Disparage the professional reputation of Plaintiff Ritten
        within the community and to potential patients for the
        purpose of dissuading potential patients to engage the
        services of Plaintiff Ritten;

d.      and other combined action yet to be discovered.

90.     Defendants Daly, Allen, and Gromada intended to, by taking the

action alleged above, restrain trade. To wit;

a.      Prevent competition for obstetrical and gynecological
        services in the relevant geographic market;

b.      Foreclose Plaintiff Ritten's ability to compete in the
        relevant geographic market in providing the relevant
        product: obstetrical and gynecological services;

c.      Eliminate competitive options for potential patients/
        product end-users, to wit: potential obstetrical/
        gynecological patients;

d. Monopolizing or attempting to monopolize the relevant geographic and product markets; and

e. other such specific intent to restrain trade yet to be discovered.

91. Defendants actions caused restraint of trade, to wit:

a. Preventing Plaintiff Ritten from competing to provide obstetrical and gynecological services in the relevant geographic market area;

b. Dissuading others from competing in the relevant market;

c. Eliminating competitive options for obstetrical/ gynecological patients in the relevant geographic market; and

d. Other restraints upon trade yet to be discovered.

92. The aforementioned injuries are those against which the anti-trust laws are designed to prevent.

93. Given the nature of the relevant product market and the unique characteristics of the relevant geographic market, there is a dangerous probability for Defendants to achieve monopoly power.

94. As a direct and proximate result of the above-described violations of 15 USCS §1 and 2, Plaintiff has suffered substantial economic and non-economic injuries and damages, past and future, including but not limited to:

a. The loss of his staff privileges and his medical practice, resulting in substantial loss of earnings, past and future;

b.     The loss of his ability to provide the relevant product (obstetrical and gynecological services) within the relevant geographic market in which Plaintiff had garnered substantial goodwill and enjoyed a good reputation;

c.     Substantial economic losses in defending himself from the actions of Defendants Daly, Allen and Gromada before the hospital board, including the payment of attorney fees;

d.     Extreme embarrassment, humiliation, inconvenience, extreme mental anguish, outrage and indignity;

e.     Other damages permitted by law to make Plaintiff whole.

WHEREFORE, Plaintiff prays for Judgment against Defendants Daly, Allen and Gromada, jointly and severally, in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, along with interest, costs, attorney fees and treble damages as allowed under the Sherman Act.

Respectfully submitted,

DIB, FAGAN AND BRAULT, P.C.                    FIEGER FIEGER KENNEY & JOHNSON, P.C.

By: _____              By: _____ w/ consent
    Barry S. Fagan (P34275)                   Geoffrey Fieger (P30441)
    Darcie R. Brault  (P43864)                Jeffrey Danzig (P36571)
    Attorney for Plaintiffs                   Attorneys for Plaintiffs
    25892 Woodward Avenue                     19390 W. 10 Mile Road
    Royal Oak, MI  48067-0910                 Southfield, MI  48075

Dated: January 17, 2007

21

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY M. RITTEN, M.D.,

     Plaintiff,

-vs-

LAPEER REGIONAL MEDICAL CENTER,
d/b/a LAPEER GENERAL HOSPITAL
and LAPEER REGIONAL HOSPITAL,
McLAREN HEALTH CARE CORPORATION,
BARTON P. BUXTON, DARLENE F. DALY, D.O.,
LISA M. ALLEN, D.O., JAN GROMADA, D.O.,
and SCOTT MANGO, R.N., jointly and severally,

     Defendants.

_____/

Case: 2:07-cv-10265
Assigned To: Rosen, Gerald E
Referral Judge: Scheer, Donald A
Filed: 01-17-2007 At 10:54 AM
CMP RITTEN V. LAPEER REGIONAL MEDIC
AL CENTER ET AL (SMS)

Barry S. Fagan (P34275)
Darcie R. Brault (P43864)
DIB, FAGAN AND BRAULT, P.C.
Attorneys for Plaintiff
25892 Woodward Avenue
Royal Oak, MI 48067-0910
(248) 542-6300

Geoffrey N. Feiger (P30441)
Jeffrey A. Danzig (P36571)
FIEGER FIEGER KENNEY & JOHNSON, P.C.
Attorneys for Plaintiff
19390 W. 10 mile Road
Southfield, MI 48075
(248) 355-5555

_____/

## PLAINTIFF'S DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, by and through his attorneys, DIB, FAGAN AND

BRAULT, P.C. and FIEGER, FIEGER, KENNEY & JOHNSON, P.C., and hereby demands

trial by jury on the above matter.

Respectfully submitted,

DIB, FAGAN AND BRAULT, P.C.

By: _____

    Barry S. Fagan (P34275)
    Darcie R. Brault  (P43864)
    Attorney for Plaintiffs
    25892 Woodward Avenue
    Royal Oak, MI  48067-0910

Dated: January 17, 2007

FIEGER FIEGER KENNEY & JOHNSON, P.C.

By: _____ w/ consent

    Geoffrey Fieger (P30441)
    Jeffrey Danzig (P36571)
    Attorneys for Plaintiffs
    19390 W. 10 Mile Road
    Southfield, MI  48075

**JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Gary M. Ritten, M.D.

**DEFENDANTS**

Lapeer Regional Medical Center, d/b/a Lapeer General Hospital and Lapeer Regional Hospital, McLaren Health Care Corporation, Barton P. Buxton, Darlene F. Daly, D.O., Lisa M. Allen, D.O., Jan Gromada, D.O., and Scott Mango, R.N.

**(b)** County of Residence of First Listed Plaintiff    Lapeer County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Lapeer County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Barry S. Fagan (P34275)    Dib, Fagan and Brault, P.C.
25892 Woodward Avenue    (248) 542-6300
Royal Oak, MI 48067-0910

Atto

Case: 2:07-cv-10265
Assigned To: Rosen, Gerald E
Referral Judge: Scheer, Donald A
Filed: 01-17-2007 At 10:36 AM
CMP RITTEN V. LAPEER REGIONAL MEDIC
AL CENTER ET AL (SMS)

## II. BASIS OF JURISDICTION (Select One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZE (For Di

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Select One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 900 Appeal of Fee Determination Under Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Select One Box Only)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. § 1395dd and 15 U.S.C § 1 and 2

Brief description of cause:
Violation of Whistleblower's provision of 42 U.S.C. § 1395dd

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** in excess of $75,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE        DOCKET NUMBER

DATE
January 17, 2007

SIGNATURE OF ATTORNEY OF RECORD
*Barry S. Fag—*

FOR OFFICE USE ONLY

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

URSUANT TO LOCAL RULE 83.11

1.      Is this a case that has been previously dismissed?                    ☐ Yes
                                                                              ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.      Other than stated above, are there any pending or previously
        discontinued or dismissed companion cases in this or any other      ☐ Yes
        court, including state court? (Companion cases are matters in which   ☑ No
        it appears substantially similar evidence will be offered or the same
        or related parties are present and the cases arise out of the same
        transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :