**EXHIBIT A**
**Lapeer Regional Medical Center**
**Medical Staff Bylaws**

LAPEER REGIONAL HOSPITAL


MEDICAL STAFF BYLAWS

---

TABLE OF CONTENTS

PREAMBLE .............................................................................................................. 1

ARTICLE I ............................................................................................................... 1

    DEFINITIONS .................................................................................................. 1

        1.01   "Adverse" ..................................................................................... 1
        1.02   "Allied Health Professional" ......................................................... 1
        1.03   "Board of Trustees" ...................................................................... 1
        1.04   "Business Days" ........................................................................... 1
        1.05   "Chief Executive Officer" .............................................................. 2
        1.06   "Day" ............................................................................................ 2
        1.07   "Executive Committee" ................................................................. 2
        1.08   "Favorable" ................................................................................... 2
        1.09   "Hospital" ..................................................................................... 2
        1.10   "May" ............................................................................................ 2
        1.11   "Medical Staff" .............................................................................. 2
        1.12   "Medical Staff Member" ................................................................ 2
        1.13   "Medical Staff Year" ..................................................................... 2
        1.14   "Practitioner" ................................................................................ 2
        1.15   "Privileges" ................................................................................... 2
        1.16   "Rules and Regulations ............................................................... 2
        1.17   "Shall" .......................................................................................... 2

ARTICLE II ............................................................................................................. 3

      NAME ............................................................................................................ 3

ARTICLE III ............................................................................................................ 3

    PURPOSE OF THE MEDICAL STAFF ........................................................... 3

        3.01    General ....................................................................................... 3

        3.01.01 Patient Care ............................................................................. 3
        3.01.02 Professional Performance ....................................................... 3
        3.01.03 Governance .............................................................................. 3
        3.01.04 Recommendations of Privileges ............................................. 3
        3.01.05 Educational Activities ............................................................... 3
        3.01.06 Medical Research ..................................................................... 3
        3.01.07 Communication ........................................................................ 3

ARTICLE IV ............................................................................................................ 3

    APPOINTMENT TO THE MEDICAL STAFF ................................................... 3

        4.01    Nature of Membership ................................................................ 3
        4.02    Eligibility .................................................................................... 3
        4.03    Appointment by Board of Trustees ............................................ 4
        4.04    Clinical Privileges ...................................................................... 4
        4.05    Responsibilities of Appointment ................................................ 4
        4.06    Ethics ......................................................................................... 4
        4.07    Provisional Appointment ............................................................ 5

-9355-

4.07.01 Appointment..................................................................................5
4.07.02 Privileges and Responsibilities ...............................................5
4.07.03 Duties......................................................................................5

ARTICLE V...............................................................................................5

CATEGOREIS OF THE MEDICAL STAFF .............................................5

5.01     Categories ...............................................................................5
5.02     Active Medical Staff ................................................................6
5.03     Consulting Medical Staff.........................................................6
5.04     Courtesy Medical Staff ...........................................................6
5.05     Emeritus Medical Staff............................................................6
5.06     Honorary Medical Staff ...........................................................7
5.07     Correspondence Medical Staff ...............................................7
5.08     Change of Staff Category........................................................7

ARTICLE VI..............................................................................................7

PROCEDURE FOR APPOINTMENT AND REAPPOINTMENT .................7

6.01     General ....................................................................................7
6.02     Appointment and Reappointment ...........................................7
6.03     Procedure for Appointment.....................................................7

6.03.01 Application Form.......................................................................7
6.03.02 Additional Information...............................................................8
6.03.03 Effect of Application.................................................................8
6.03.04 Processing the Application .......................................................10
6.03.05 Communication of Recommendation of Medical Executive Committee..............11
6.03.06 Board of Trustees Action .........................................................11
6.03.07 Conflict ....................................................................................12
6.03.08 Reapplication After Adverse Decision .....................................12
6.03.09 Term of Appointment ...............................................................12

6.04     Procedure for Reappointment .................................................12

6.04.01 Grouping of the Medical Staff ..................................................12
6.04.02 Reappointment Form................................................................13
6.04.03 Verification of Application for Reappointment ..........................13
6.04.04 Additional Information...............................................................13
6.04.05 Credentials Committee Action .................................................14
6.04.06 Medical Executive Committee Action .......................................14
6.04.07 Communication of Recommendation of Medical Executive Committee..............14
6.04.08 Board of Trustees Action .........................................................14
6.04.09 Extension of Appointment.........................................................15

6.05     Provisions Applicable to Appointment and Reappointment .....15

6.05.01 Notice of Final and Favorable Decision....................................15
6.05.02 Conflict Resolution...................................................................15
6.05.03 Bases for Recommendation and Decision ...............................15
6.05.04 Right to Single Hearing.............................................................16
6.05.05 Availability of Hospital Facilities................................................16

ii

6.06    Leave of Absence ..................................................................................................16

6.06.01 Grant of Leave ......................................................................................................16
6.06.02 Duration of Leave ..................................................................................................16
6.06.03 Return of Leave ....................................................................................................16
6.06.04 Military Leaves ......................................................................................................16

**ARTICLE VII** .................................................................................................................16

CLINICAL PRIVILEGES ...................................................................................................17

7.01    Exercise of Privileges ............................................................................................17
7.02    Request of Privileges .............................................................................................17
7.03    Basis for Privileges Determinations .......................................................................17
7.04    Privileges of Limited License Practitioners ............................................................17
7.05    Procedure ...............................................................................................................17
7.06    Privileges During Provisional Appointment .............................................................17
7.07    Report to Data Bank ...............................................................................................17

7.07.01 Report of Final Decision ........................................................................................18
7.07.02 Dispute Regarding Report .....................................................................................18

7.08    Temporary Privileges .............................................................................................18

7.08.01 Circumstances .......................................................................................................18
7.08.02 Conditions .............................................................................................................18
7.08.03 Termination ............................................................................................................19
7.08.04 Right of Practitioner ...............................................................................................19

7.09    Emergency Privileges .............................................................................................19

**ARTICLE VIII** ................................................................................................................19

CORRECTIVE ACTION AND SUMMARY AND AUTOMATIC SUSPENSION .....................19

8.01    Corrective Action ...................................................................................................19

8.01.01 Criteria for Initiation ..............................................................................................19
8.01.02 Requests and Notices ...........................................................................................19
8.01.03 Action by the Chief of Staff ...................................................................................20
8.01.04 Investigation ..........................................................................................................20
8.01.05 Medical Ethics and Grievance Committee Report ..................................................20
8.01.06 Medical Executive Committee Recommendation ....................................................20
8.01.07 Board of Trustees Action .......................................................................................20

8.02    Summary Suspension .............................................................................................20

8.02.01 Criteria and Initiation .............................................................................................20
8.02.02 Medical Executive Committee Consideration of Summary Suspension ..................21
8.02.03 Subsequent Action Regarding Summary Suspension ............................................21
8.02.04 Continuation of Patient Care .................................................................................21

8.03    Automatic Suspension ...........................................................................................21

8.03.01 Triggering Events ..................................................................................................21

iii

8.03.02 Notice of Automatic Suspension...................................................22
8.03.03 Results of Automatic Suspension...................................................22
8.03.04 Enforcement ...........................................................................22
8.03.05 Procedural Rights ...................................................................22
8.03.06 Continuation of Patient Care .....................................................22

8.04    Termination by board of Trustees ..................................................22

ARTICLE IX...........................................................................................23

HEARING AND APPELLATE REVIEW.......................................................23

9.01    Right to Hearing and Appellate Review .........................................23

9.01.01 Following Adverse Recommendation .............................................23
9.01.02 Without Adverse Recommendation................................................23
9.01.03 Procedural Safeguards ..............................................................23

9.02    Initiation of Hearing...................................................................23

9.02.01 Notice of Adverse Recommendation or Action ...............................23
9.02.02 Request For Hearing .................................................................24
9.02.03 Waiver by Failure to Request a Hearing .......................................24

9.03    Notice of Hearing.......................................................................24
9.04    Composition of Hearing Committee ...............................................24

9.04.01 Adverse Recommendation of Medical Executive Committee ............24
9.04.02 Adverse Decision of Board of Trustees .........................................25

9.05    Conduct of Hearing.....................................................................25

9.05.01 Presence of Committee Members.................................................25
9.05.02 Personal Presence of Practitioner ...............................................25
9.05.03 Record of Hearing .....................................................................25
9.05.04 Postponement............................................................................25
9.05.05 Representation ...........................................................................25
9.05.06 Presiding Officer ........................................................................25
9.05.07 Procedure and Evidence .............................................................25
9.05.08 Burden of Proof .........................................................................26
9.05.09 Right of the Parties ...................................................................26
9.05.10 Recess and Adjournment ............................................................26

9.06    Hearing Committee Report and Further Action ...............................26

9.06.01 Hearing Committee Report...........................................................26
9.06.02 Action on Hearing Committee Report.............................................26

9.07    Initiation of Appellate Review ......................................................26

9.07.01 Request for Appellate Review ......................................................26
9.07.02 Waiver of Appellate Review.........................................................26
9.07.03 Notice of Time and Place for Appellate Review ..............................27
9.07.04 Appellate Review Body................................................................27

9.08    Appellate Review Procedure ........................................................27

-9358-

9.08.01 Nature of Proceedings.................................................................27
9.08.02 Access to Record ......................................................................27
9.08.03 Written Statement......................................................................27
9.08.04 Nature of the Review.................................................................27
9.08.05 Oral Statements.........................................................................27
9.08.06 Consideration of New or Additional Matters ..........................27
9.08.07 Action Taken ..............................................................................28
9.08.08 Conclusion ..................................................................................28
9.08.09 Final Decision by the Board of Trustees ................................28

9.09      Number of Hearings and Reviews .....................................28

ARTICLE X.....................................................................................................28

OFFICERS OF THE MEDICAL STAFF......................................................28

10.01   Officers of the Medical Staff ................................................28
10.02   Term of Office...........................................................................29
10.03   Election of Officers .................................................................29

10.03.01 Nomination...............................................................................29
10.03.02 Election......................................................................................29
10.03.03 Method for Removal of an Elected Officer of the Medical Staff .....29
10.03.04 Grounds for Removal of an Officer of the Medical Staff...........30
10.03.05 Vacancies in Office.................................................................30

10.04   Chief of Staff............................................................................30
10.05   Vice Chief of Staff ..................................................................31

ARTICLE XI....................................................................................................31

MEDICAL EXECUTIVE COMMITTEE........................................................31

11.01   Composition of the Medical Executive Committee .............31
11.02   Duties of the Medical executive Committee .......................31
11.03   General Powers of the Medical Executive Committee .......31
11.04   Vacancies on Medical executive Committee ......................31
11.05   Meetings of the Medical Executive Committee ..................32

ARTICLE XII...................................................................................................32

COMMITTEES OF THE MEDICAL STAFF ...............................................32

12.01   Standing Committees..............................................................32
12.02   Additional Committees............................................................32
12.03   Members....................................................................................32

12.03.01 Term...........................................................................................32
12.03.02 Members of Medical Staff......................................................32
12.03.03 Removal and Appointment .....................................................33
12.03.04 Chief of Staff............................................................................33

12.04   Chairman ..................................................................................33

12.04.01 Members of Medical Staff......................................................33

v

12.04.02 Term ........................................................................................................... 33

12.05    Meetings ................................................................................................... 33

12.05.01 Frequency ............................................................................................ 33
12.05.02 Quorum ............................................................................................... 33
12.05.03 Abstention ........................................................................................... 33
12.05.04 Minutes ............................................................................................... 33

12.06    Composition of Committees ...................................................................... 33

## ARTICLE XIII

### DEPARTMENTS AND SECTIONS ........................................................................... 33

13.01    Clinical Sections ........................................................................................ 33
13.02    Specialized Practitioners ........................................................................... 33

13.02.01 Podiatry ............................................................................................... 34
13.02.02 Dental and Oral Surgery ...................................................................... 34

13.03    Clinical Departments ................................................................................. 34

13.03.01 Medical Department .............................................................................. 34
13.03.02 Surgical Department ............................................................................. 34
13.03.03 Family Medicine Department ................................................................ 34

13.04    Functions of Sections and Departments ..................................................... 34

13.04.01 Quality Monitoring ............................................................................... 34
13.04.02 Criteria for Privileges ........................................................................... 34
13.04.03 Organization, Education, and Rules and Regulations ............................. 34
13.04.04 Section and Department Reports .......................................................... 34

13.05    Department Chairman ................................................................................ 34

13.05.01 Qualifications ....................................................................................... 34
13.05.02 Selection .............................................................................................. 34
13.05.03 Vice-Chairman ..................................................................................... 35
13.05.04 Duties of Chairman .............................................................................. 35

13.06    Section Chiefs ........................................................................................... 35

13.06.01 Qualifications ....................................................................................... 35
13.06.02 Selection .............................................................................................. 35
13.06.03 Role of Section Chief ............................................................................ 35

13.07    Removal of Department Chairman and Section Chiefs ................................. 35
13.08    Director of ICU/CCU ................................................................................... 35
13.09    Modification of Clinical Organization .......................................................... 36

13.09.01 Modification Permitted ......................................................................... 36
13.09.02 Organization of Modification ................................................................ 36
13.09.03 Consideration by the Medical Executive Committee ............................... 36
13.09.04 Vote by Medical Staff ........................................................................... 36
13.09.05 Ruling by the Board of Trustees ........................................................... 37

-9360-

**ARTICLE XIV**

ALLIED HEALTH PROFESSIONALS..............................................................................37

    14.01   Qualifications............................................................................................37
    14.02   Status........................................................................................................37
    14.03   Application for Appointment and Privileges.............................................37
    14.04   Terms of Appointment...............................................................................37
    14.05   Clinical Privileges.....................................................................................38
    14.06   Renewal of Appointment and of Privileges..............................................38
    14.07   Grant of Appointment and Privileges.......................................................38
    14.08   Responsibilities and Prerogatives of Allied Health Professional Staff Members ............38

    14.08.01 Individual Responsibilities ...................................................................38
    14.08.02 Prerogatives.........................................................................................39

    14.09   Corrective Action ......................................................................................39

    14.09.01 Initiation of Corrective Action .............................................................39
    14.09.02 Notice of Board of Trustees.................................................................40
    14.09.03 Medical Executive Committee Investigation ........................................40
    14.09.04 Medical Executive Committee Recommendation .................................40
    14.09.05 Subsequent Action ..............................................................................40
    14.09.06 Board of Trustees Action .....................................................................40

    14.10   Suspension and Other Restrictive Action ................................................40

    14.10.01 Summary Suspension ..........................................................................40
    14.10.02 Other Restrictive Action.......................................................................41

    14.11   Meeting with Medical Executive Committee ............................................41

    14.11.01 Applicable Circumstances ...................................................................41
    14.11.02 Notice, Request, and Waiver ...............................................................41
    14.11.03 Conduct of Meeting .............................................................................41
    14.11.04 Subsequent Action by the Medical Executive Committee....................41

**ARTICLE XV**..................................................................................................................41

MEDICAL STAFF MEETINGS .....................................................................................41

    15.01   Annual Meeting.........................................................................................41
    15.02   Regular Meetings .....................................................................................41
    15.03   Special Meetings ......................................................................................42
    15.04   Attendance Requirements ........................................................................42
    15.05   Quorum.....................................................................................................42
    15.06   Notice.......................................................................................................42
    15.07   Agenda.....................................................................................................42
    15.08   Procedure .................................................................................................42

**ARTICLE XVI**.................................................................................................................42

COMMITTEE, SECTION AND DEPARTMENT MEETINGS............................................42

    16.01   Regular Meetings .....................................................................................43

16.01.01 Committee Meetings ................................................................................ 43
16.01.02 Quality Management Meetings .................................................................. 43

16.02    Special Meetings ........................................................................................ 43
16.03    Notice of Meeting ....................................................................................... 43
16.04    Manner of Meeting ..................................................................................... 43
16.05    Minutes ....................................................................................................... 43
16.06    Attendance Requirements ......................................................................... 43

16.06.01 Annual Requirements ................................................................................. 43
16.06.02 Attendance to Discuss Patient ................................................................. 43

ARTICLE XVII .............................................................................................................. 43

    RULES AND REGULATIONS OF THE MEDICAL STAFF ................................... 43

ARTICLE XVIII ............................................................................................................. 44

    PROFESSIONAL PRACTICE REVIEW FUNCTION ............................................ 44

    18.01    Functions of Medical Staff Organization and Administration ................... 44

    18.01.01 Professional Practice Review Functions ................................................... 44
    18.01.02 Department and Section Professional Review Functions ......................... 44
    18.01.03 Officers and Administration Professional Review Functions .................... 44
    18.01.04 Employee Professional Review Functions ................................................ 44

    18.02    Board of Trustees' Authority and Function ............................................... 44
    18.03    Confidentiality of Information ..................................................................... 44
    18.04    Immunity From Liability .............................................................................. 44

ARTICLE XIX ............................................................................................................... 45

    GENERAL PROVISIONS ...................................................................................... 45

    19.01    Dues and Assessments ............................................................................. 45
    19.02    Construction of Terms and Headings ........................................................ 45
    19.03    Authority to Act .......................................................................................... 45
    19.04    Division of Fees ......................................................................................... 45

ARTICLE XX ................................................................................................................ 45

    AMENDMENTS 45

    20.01    Periodic Review ......................................................................................... 46
    20.02    Initiation by the Medical Staff .................................................................... 46
    20.03    Initiation by the Board of Trustees ............................................................ 46

ARTICLE XXI ............................................................................................................... 46

    ADOPTION ........................................................................................................... 46

    21.01    Bylaws ........................................................................................................ 46
    21.02    Rules and Regulations ............................................................................... 46

-9362-

LAPEER REGIONAL HOSPITAL

MEDICAL STAFF BYLAWS

---

PREAMBLE

WHEREAS, Lapeer Regional Hospital is a nonprofit corporation organized under the laws of the State of Michigan; and

WHEREAS, the purposes of the Hospital include the provision of medical care, health education, and health research; and

WHEREAS, Practitioners and Allied Health Professional staff administer the medical care provided in the Hospital, subject to the authority of the Board of Trustees; and

WHEREAS, the Practitioners practicing in the Hospital and the Board of Trustees have adopted these Medical Staff Bylaws to establish guidelines under which the Practitioners will organize and govern themselves.

THEREFORE, the Practitioners and Allied Health Professional staff practicing in the Hospital agree to conduct themselves in conformity with these Medical Staff Bylaws.

ARTICLE I

For the purposes of these Bylaws, the following definitions shall apply to these terms:

DEFINITIONS

1.01    "Adverse" means a recommendation or decision which does not favor:  appointment to the Medical Staff and to the Medical Staff category requested; grant of initial or modified Privileges requested, in their entirety and without limitation; reappointment to the Medical Staff or to the existing Medical Staff category, As requested; or renewal of existing Privileges.  A recommendation or decision shall also be Adverse, if it favors: a consultation requirement; continuation of a summary suspension; or suspension or revocation of Medical Staff membership or suspension, restriction or reduction or Privileges.

1.02    "Allied Health Professional" means a licensed or certified health care professional, other than one eligible for Medical Staff membership, who has been approved to render patient care in the Hospital.  Allied Health Professionals may include without limitation clinical psychologists, clinical pharmacologists, certified nurse anesthetists, nurse clinicians and practitioners psychiatric nurse practitioners, physician assistants and doctoral scientists (Ph.D.), including without limitation, microbiologists, physiologists, psychiatric social workers, physicists and such others as are determined by the Board of Trustees.

1.03    "Board of Trustees" means the Lapeer Regional Hospital Board of Trustees.

1.04    "Business Days" means Monday through Friday, excluding holidays.  Holidays shall mean those days recognized as holidays by Lapeer Regional Hospital in its employee handbook or manual, as

amended from time to time. At the adoption of these Medical Staff Bylaws, the holidays recognized are set forth in Policy/Procedure 13:71:25. Those holidays are: New Year's Day, Memorial Day, July 4th, Labor Day, Thanksgiving, and Christmas.

1.05    "Chief Executive Officer" means the Chief Executive Officer of the Hospital or his designee.

1.06    "Day" or "Days" shall mean Business Days unless otherwise specified.

1.07    "Executive Committee" or "Medical Executive Committee" means the Medical Executive Committee of the Medical Staff as described in Article XI of these Bylaws.

1.08    "Favorable" means a recommendation or decision, which favors appointment to the Medical Staff and to the Medical Staff category requested; grant of initial or modified Privileges requested, in their entirety and without limitation; reappointment to the Medical Staff and to the existing Medical Staff category, as requested; or renewal of existing Privileges. A recommendation or decision shall also be Favorable, if it favors: dissolution of a summary suspension; or continuation of Medical Staff membership and Privileges, without restriction or reduction.

1.09    "Hospital" means Lapeer Regional Hospital, a Michigan nonprofit corporation, together with the hospital facility located at 1375 North Main Street, Lapeer, Michigan, and the various satellite facilities operated by Lapeer Regional Hospital.

1.10    The word "may" is permissive only.

1.11    "Medical Staff" means the formal organization of Practitioners who have been granted privileges to attend patients in the Hospital.

1.12    "Medical Staff Member" or "Staff Member" means a Practitioner who has completed provisional staff status, if applicable, and has been appointed to the Medical Staff.

1.13    "Medical Staff Year" means the period that commences on the first (1st) day of January and ends on the thirty-first (31st) day of December of each year.

1.14    "Practitioner" means, unless otherwise expressly limited, any appropriately licensed medical physician or surgeon, osteopathic physician or surgeon, dentist, or podiatrist applying for or who has been granted clinical privileges in the Hospital.

1.15    "Privileges" or "clinical privileges" means the extent to which a Medical Staff Member or an Allied health Professional is permitted to utilize the Hospital and its facilities for the performance of surgery, medical treatment, and care of patients in the Hospital.

1.16    "Rules and Regulations" means the rules and regulations adopted from time to time by the Medical Staff, pursuant to Article XVII of these Bylaws.

1.17    The word "shall" is mandatory and not permissive.

-9364-

ARTICLE II

NAME

The name of this organization shall be the Medical Staff of Lapeer Regional Hospital.

ARTICLE III

PURPOSES OF THE MEDICAL STAFF

3.01    General.  The purposes of the Medical Staff shall be:

    3.01.01    Patient Care.  To make available patient care conforming with applicable standards of professional practice to all patients admitted to or treated in any of the facilities, departments, or services of the Hospital.

    3.01.02    Professional Performance.  To monitor the professional performance of all Practitioners and Allied Health Professionals authorized to practice in the Hospital.

    3.01.03    Governance.  To initiate and maintain governance of the Medical Staff.

    3.01.04    Recommendations of Privileges.  To review and recommend to the Board of Trustees the clinical Privileges that each Medical Staff Member and Allied Health Professional may exercise in the Hospital.

    3.01.05    Educational Activities.  To encourage and support appropriate educational activities for Practitioners, nurses, and Allied Health Professionals.

    3.01.06    Medical Research.  To support and monitor appropriate medical research in the Hospital.

    3.01.07    Communication.  To provide a means for communication of medical-administrative matters among the Medical Staff, the Board of Trustees, and the administration of the Hospital.

ARTICLE IV
APPOINTMENT TO THE MEDICAL STAFF

4.01    Nature of Membership.  Membership on the Medical Staff of the Hospital is a privilege which shall be extended only to professionally competent Practitioners who continuously meet the qualifications, standards, and requirements set forth in these Bylaws.  A Medical Staff Member is neither an employee nor an independent contractor of the Hospital unless such a relationship has separately been established between the Hospital and the Medical Staff Member.

4.02    Eligibility.  Only physicians, dentists, and podiatrists licensed to practice in the State of Michigan who can document their background, experience, training, demonstrated professional competence, adherence to the ethics of their profession, their good character and judgment, mental and physical health, and ability to work with others, with sufficient adequacy to demonstrate that any patient treated by them in the Hospital will receive care in accordance with the prevailing standards of professional practice, shall be qualified for membership on the Medical Staff.  The residence and practice of an applicant shall be located within sufficient proximity to the Hospital to permit the applicant to respond

3

to the medical needs of his or her patients on a timely basis.  No applicant shall be entitled to membership on the Medical Staff or to exercise particular clinical Privileges in the Hospital merely by virtue of the fact that he or she is duly licensed to practice medicine, osteopathic medicine, dentistry, or podiatry in this or in any other state, or is a member of any professional organization, had or has Privileges at this Hospital or another hospital or that he has any type of affiliation with a Staff Member.

4.03     Appointment by Board of Trustees.   Initial appointments and all reappointments to the Medical Staff, and all grants, modifications and renewals of Privileges, shall be made by the Board of Trustees.  The Board of Trustees shall act on appointments, reappointments, revocations of appointment, suspension, reduction or restriction of Privileges, and other types of corrective action upon which the Board of Trustees is required to pass under these Bylaws after there has been a recommendation from the Executive Committee as provided from these Bylaws.  However, the Board of Trustees may act in these matters without a recommendation from the Executive Committee, if the Executive Committee does not make a recommendation to the Board of Trustees within the applicable time limits specified in these Bylaws.  The Board of Trustees also has the independent right to terminate a Staff Member from the Medical Staff and to terminate the Privileges of a Staff Member, if in the sole judgment of the Board of Trustees the welfare of the Hospital or the care of its patients requires such action; provided, however such termination shall be subject to the rights of hearing and appellate review afforded to the Staff Member in Article IX of these Bylaws.

4.04     Clinical Privileges.   Appointment to the Medical Staff shall not entitle the appointee to Privileges.  Privileges shall be granted only pursuant to the procedures of these Bylaws with respect to Privileges.  The Privileges granted to a Medical Staff Member shall be those granted by the Board of Trustees in accordance with the provisions of these Bylaws with respect to Privileges.

4.05     Responsibilities of Appointment.  Acceptance of and continuation of membership on the Medical Staff shall constitute a continuing promise by the Staff Member that he will abide by these Bylaws and all Medical Staff Rules and Regulations and Hospital policies, that he will accept Medical Staff, committee, department, proctor, monitorship, and consultation assignments, that he will provide continuous care for his patients in accordance with the applicable standards of professional practice, that he will conduct himself in a professional manner, that he will participate in staffing the Hospital emergency service area and other special care units on an equitable basis as recommended by the Medical Executive Committee and approved by the Board of Trustees so that all Hospital patients will have available to them a Staff Member with appropriate Privileges, that he will participate in peer review activities, that he will abide by the Bylaws of Lapeer Regional Hospital, and that he will exhaust all administrative remedies provided by these Bylaws before initiating any legal proceeding in any state or federal court.  Each Member of the Medical Staff agrees to subject his performance to, and faithfully participate in, the Hospital's quality and utilization management programs, the responsible peer review organization, and other external regulatory agencies.  A Member of the Medical Staff who is temporarily unavailable or unable to attend his own Hospital patients shall be responsible to ensure coverage for those patients with another Staff Member with appropriate Privileges.

4.06     Ethics.  Acceptance of Medical Staff membership shall constitute the applicant's agreement to abide strictly by:

a.     The Principles or Code of Ethics, as amended from time to time, of the American Medical Association, the American Osteopathic Association, the American Dental Association, the American Podiatry Association, or of the recognized national association of the Practitioner, including the association of a foreign country.

b.     The applicable provisions of Act 368 of the Michigan Public Acts of 1978, as

4

amended, or any successor law pertaining to professional and hospital licensure.

     c.     The Medicare conditions of participation.

     d.     The provisions of law applicable to participation in the Medicaid program; and

     e.     The reasonable and appropriate requirements of other Hospital third-party payors that have a material effect on the Hospital's ability to be reimbursed for services rendered.

4.07    <u>Provisional Appointment.</u>

     4.07.01    <u>Appointment.</u>  Appointment to the Active Staff, Consulting Staff, and Courtesy Staff shall initially be provisional for a minimum period of two years.

     4.07.02    <u>Privileges and Responsibilities.</u>  Appointees to the Medical Staff on a provisional basis shall generally have the same privileges and responsibilities as Medical Staff Members of the respective staff category for which appointment is sought.  Provisional Medical Staff appointees shall exercise clinical privileges as are granted to them in accordance with the credentialing procedures.  Provisional Medical Staff appointees may participate in Medical Staff activities through membership with vote at committees of the Medical Staff, Department and Section meetings.  However, and notwithstanding, anything which may appear to the contrary in these Bylaws, Provisional Medical Staff appointees shall not:  a)  Vote at meetings of the Medical Staff; b) Hold Medical Staff office; c) Serve as Department Chairman or Section Chief or Vice Chief unless the approval of the Medical Executive Committee is given; or d) Vote for Department Chairman or Section Chief unless the approval of the Medical Executive Committee is given.

     4.07.03    <u>Duties.</u>  Each provisional Medical Staff appointee shall be expected to participate in staff functions as follows:

     a.     Attend the number of Medical Staff and departmental meetings as are required of Medical Staff members of the same Medical Staff category who are not provisional.

     b.     Attend and participate in seminars and conferences which pertain to the appointee's department or to the Medical Staff as a whole.

     c.     Attend orientation meetings as specified by the Medical Executive Committee.

     d.     Fulfill assignments made by the chairman of the appointee's department, including teaching service appointments.

     e.     Fulfill responsibilities assigned under any emergency patient care call schedule.

<u>ARTICLE V</u>

<u>CATEGORIES OF THE MEDICAL STAFF</u>

5.01    <u>Categories.</u>  The Medical Staff shall be divided into the Active, Consulting, Courtesy, Emeritus, Honorary, and Correspondence categories.

-9367-

5.02    Active Medical Staff.  The Active Medical Staff shall consist of those Practitioners who regularly practice at the Hospital and who assume all the functions and responsibilities of Active Staff membership.  Members of the Active Staff shall be:  (a)  assigned to a department;  (b)  eligible to serve on Medical Staff and department committees;  (c)  entitled to vote in Medical Staff, committee, and department meetings;  and  (d)  eligible to hold Medical Staff and department office.  They shall be required to attend Medical Staff and department meetings and to pay Medical Staff dues, if applicable.  Members of the Active Medical Staff may be asked by the Chief of Staff to attend patients in the Hospital.  Members of the Active Medical Staff shall be responsible for the overall care and discharge of the patients whom they attend (including obtaining consultations when appropriate).  To be reappointed to the Medical Staff, Active Medical Staff members must have 20 referrals, 20 admissions, 20 consultations/interpretations, or perform 20 invasive procedures, or 20 of these in combination during each 24 month period.

5.03    Consulting Medical Staff.  The Consulting Medical Staff shall consist of those Practitioners who are qualified to render opinions and serve as consultants in the diagnosis and treatment of Hospital patients.  Members of the Consulting Medical Staff provide an important and necessary service to the Hospital;  however, the Hospital is not the primary hospital for such Practitioners.  Members of the Consulting Medical Staff shall not be required to attend Medical Staff or department meetings, shall not be eligible to vote or hold elective office on the Medical Staff or in the department.  Members of the Consulting Medical Staff may serve on Medical Staff and department committees with vote, if permitted by the Medical Executive Committee or by the Chief of Staff.  Members of the Consulting Medical Staff shall be required to pay Medical Staff dues, if applicable.  Members of the Consulting Medical Staff shall not admit patients or have the responsibility for the overall medical care of a patient.  The daily management and the discharge of a patient shall be the responsibility of the attending physician.  Members of the Consulting Medical Staff shall be appointed to a specific department.  To be reappointed to the Medical Staff, Consulting Medical Staff members must have performed a minimum of ten (10) consults in a 24 month period.

5.04    Courtesy Medical Staff.  The Courtesy Medical Staff shall consist of Practitioners qualified for Active Medical Staff membership, but who only occasionally admit, treat or refer persons to the Hospital.  Courtesy Medical Staff Members may not treat more than a combined total of ten (10) inpatients and outpatients per year.  Courtesy Medical Staff Members who have privileges in emergency medicine may not work more than sixty (60) hours in any month in the emergency room.  Members of the Courtesy Medical Staff shall not be required to attend Medical Staff or department meetings, shall not be eligible to vote or hold elective office on the Medical Staff or in the department.  Members of the Courtesy Medical Staff may serve on Medical Staff and department committees with vote, if permitted by the Medical Executive Committee or by the Chief of Staff.  Members of the Courtesy Medical Staff shall be required to pay Medical Staff dues, if applicable.  To be reappointed to the Medical Staff, Courtesy Medical Staff members must have a maximum of 20 admissions, 20 consultations, or perform 20 invasive procedures, or 20 of these in combination during each 24 month period, but must have a minimum of 10 admissions, 10 consultations, 10 invasive procedures, 10 referrals or 10 of these in combination during each 24 month period.  Courtesy Medical Staff Members may have an unlimited amount of referrals.  Exceeding 20 admissions, consultations, invasive procedures or a combination of these during the 24 month period will require that their staff status change to Active.

5.05    Emeritus Medical Staff.  The Emeritus Medical Staff shall consist of Practitioners who have been active participants in the clinical care of patients at the Hospital for at least fifteen (15) years.  They shall be nominated by the Medical Executive Committee upon recommendation by an Active Staff member.  Members of the Emeritus Medical Staff shall not be eligible to render patient care.  Members of the Emeritus Medical Staff shall not be required to attend Medical Staff or department meetings, shall not be eligible to vote or hold elective office on the Medical Staff or in the department.  Members of the

-9368-

Emeritus Medical Staff may serve on Medical Staff and department committees with vote, if permitted by the Emeritus Medical Staff shall not be required to pay Medical Staff dues.

    5.06    <u>Honorary Medical Staff</u>.  The Honorary Medical Staff shall consist of Practitioners of outstanding reputation who may, but are not required to reside in the community.  Honorary Medical Staff members shall not be eligible to render patient care.  Members of the Honorary Medical Staff shall not be required to attend Medical Staff or department meetings, shall not be eligible to vote or hold elective office on the Medical Staff or in the department.  Members of the Honorary Medical Staff may serve on Medical Staff and department committees with vote, if permitted by the Medical Executive Committee or by the Chief of Staff.  Members of the Honorary Medical Staff shall not be required to pay Medical Staff dues.

    5.07    <u>Correspondence Medical Staff</u>.  The Correspondence Medical Staff shall consist of Practitioners who practice in the area service by the Hospital and who use the Hospital for their patients for inpatient and outpatient services, but who are not credentialed to manage patients in the Hospital.  Correspondence Medical Staff members shall not be eligible to render patient care.  They may assist in surgery for their own patients.  Members of the Correspondence Medical Staff shall not be required to attend Medical Staff or department meetings, shall not be eligible to vote or hold elective office on the Medical Staff or in the department.  Members of the Correspondence Medical Staff may serve on Medical staff and department committees with vote, if permitted by the Medical Executive Committee or by the Chief of Staff.  Members of the Correspondence Medical Staff shall be required to pay Medical Staff dues, if applicable.

    5.08    <u>Change of Staff Category</u>.  Any Staff Member who desires to change his Medical Staff category shall file with the Chief Executive Officer a signed application for change of Medical Staff category.  The form of this application shall be developed by the Medical Executive Committee and approved by the Board of Trustees.  This application shall be considered in the same manner as an application for reappointment, and the usual appointment procedures shall be followed until final decision is made by the Board of Trustee.

<u>ARTICLE VI</u>

<u>PROCEDURE FOR APPOINTMENT AND REAPPOINTMENT</u>

    6.01    <u>General</u>.  The Medical Staff, through it designated departments, sections, committees, and officers shall investigate and consider each application for appointment or reappointment and shall adopt and transmit recommendations on such applications to the Board of Trustees.

    6.02    <u>Appointment and Reappointment</u>.  Term and Department Assisgnment.  Unless otherwise specified by the Board of Trustees, appointment, and reappointment to the Medical Staff (following provisional status, if applicable) shall be for not longer than two years.  Unless otherwise specified by the Board of Trustees, appointment and reappointment shall include assignment to a single department and if applicable, to a single section.

    6.03    <u>Procedure for Appointment</u>.

        6.03.01    <u>Application Form</u>.  Each application for appointment to the Medical Staff shall be in writing and submitted on the form developed by the Medical Executive Committee and approved by the Board of Trustees and accompanied by the application fee determined by the Medical Staff.  An applicant may be required to submit a completed pre-application form, before receiving an application form.

7

6.03.02    Additional Information.  In connection with a request for Medical Staff membership , and in addition to a completed application form, each applicant shall be responsible for submitting such information and documentation as is reasonably requested by the Medical Staff or the Board of Trustees, including but not limited to:

a.    Information and proof concerning the applicant's qualifications, competence and current health status, including information regarding professional training and experience, current licensure, current DEA registration, continuing medical education; malpractice insurance and history; and professional references familiar with the applicant's professional competence and character; and information which satisfies the requirements for the membership category for which the application is submitted; and

b.    Current information and history as to all professional disciplinary actions or licensure limitations; voluntary or involuntary termination of Medical Staff membership or voluntary or involuntary suspension, limitation, reduction, non-renewal, resignation or relinquishment of clinical privileges at another hospital or health care organization.

c.    Information as to whether any of the following has ever been suspended, revoked, denied, not renewed, or voluntarily resigned or relinquished; (1)  membership or fellowship in a local, state, or national professional organization;  (2)  specialty board certification; (3)  license to practice any profession in any jurisdiction;  (4)  controlled substance registration certificate issued by the United States Department of Justice, Drug Enforcement Administration; or  (5)  license to prescribe controlled substance in any jurisdiction.

d.    Information as to whether the applicant has been convicted of a felony.

6.03.03    Effect of Application.  Each applicant shall be given a copy of these Bylaws and the Rules and Regulations of the Medical Staff prior to submission of a completed application.  Each application shall be signed by the applicant, and the applicant's signature shall constitute the applicant's statement that:

a.    The applicant has received, and has read and understands the Medical Staff Bylaws and the Rules and Regulations and agrees to be bound by their terms during the time his application in under consideration and , if Medical Staff appointment is granted, to be bound by the terms thereof while a member of the Medical Staff;

b.    The applicant acknowledges his obligation to provide continuous care and supervision of patients, and that he will accept Medical Staff, committee, department, proctor, monitorship,  and consultation assignments;

c.    The applicant authorizes any representative of Hospital administration, the Medial Staff (or committee thereof) or Board of Trustees (or committee thereof) to consult with any member of the medical staff or administration of any other hospital with which the applicant has been associated, concerning his professional and ethical qualifications and competence, or with any other person who, or entity which may have information bearing thereon, and to receive and utilize any report or information received in response thereto, and to inspect any and all records made at any such hospital or other entity which may be material to the applicant's qualifications and competence; and the applicant further agrees to release any such other hospitals, entities or persons, their employees and agents, from any and all liability for the transmittal of any information bearing on the applicant's qualifications and competence, in connection with any such request.

−9370−

d.      The applicant agrees to appear upon request for one or more interviews with the Medical Staff, the Board of Trustees, or committees or designee(s) thereof concerning this application or any subsequent application for renewal or extension of appointment and Privileges or in connection with any proceedings to rescind the applicant's appointment or to restrict or terminate any Privileges which may be granted.

e.      The applicant agrees to release the hospital, its agents and employees and all members of the Board of Trustees, the Hospital administration and the Medical Staff from all liability for any statements made or any action taken in good faith and without malice in connection with the consideration of this or any other application, in connection with any proceedings for reappointment, advancement, denial or rescission of appointment, reduction, suspension, or termination of Privileges, or transfer to any other category of the Medical Staff pursuant to this or any other application for appointment or reappointment, and in connection with any other form of review of professional practices of Medical Staff members in the Hospital.

f.      The applicant agrees to release the Hospital, its agents and employees, and all members of the Board of Trustees, the Hospital administration, and the Medical Staff from all liability for forwarding to any other hospital or entity to which the applicant may apply for privileges any information concerning the applicant or the applicant's appointment or reappointment, his or her Privileges, extension, reduction, suspension, or termination of Privileges, or transfer to any other category of the Medical Staff at the Hospital.

g.      The applicant agrees to submit to, and pay the cost of, an examination regarding the applicant's physical or mental condition, performed by a person selected by the Medical Executive Committee and Board of Trustees, upon request made by the Credentials Committee, Medical Executive Committee, or the Board of Trustees after consultation with Medical Executive Committee, in conjunction with initial appointment reappointment or at any time in which the physical or mental health of the individual is at issue.

h.      The applicant agrees that, at any time in which the physical or mental health of the applicant is at issue, the applicant will waive in favor of the Hospital, its agents and employees, and all members of the Board of Trustees, administration, and Medical Staff any medical or physician-patient privilege relating to such physical or mental condition, whether such privilege is granted by the statutes or case law of the State of Michigan or any other jurisdiction, or is granted by the provisions of federal law or regulations.  The applicant shall further release any physician, hospital or other person or entity providing such information from any and all liability for providing any information, which, except for such waiver, would be privileged and confidential.  In the event that the applicant shall fail to facilitate the release of such information by providing appropriate release and authorization forms, or in the event that a physician, hospital, or other person or entity presented with such forms continues to refuse to provide information, the applicant shall be informed that there shall be no further consideration of the application.

i.      The applicant acknowledges and agrees that patient charts and records are privileged and confidential; all records, information, data and knowledge regarding professional practice review functions of the Hospital are required to be kept confidential pursuant to state law, including without limitation, proceedings for appointment, reappointment, advancement, denial or rescission of appointment, reduction, suspension, or termination of Privileges, transfer to any other division of the staff, and the work of committees and individual assigned professional practice review functions pursuant to these Bylaws, the Rules and Regulations and the policies and procedures of the Hospital and the Medical Staff; and the applicant's specific agreement to

9

keep all such information confidential, recognizing that any breach of such confidentiality shall result in immediate rescission of Medical Staff appointment and termination of Privileges.

      j.      The applicant acknowledges that any significant or intentional misstatements and/or omissions by the applicant made any time during the application process may be cause for denial of the application or termination of Medical Staff membership and/or Privileges.

      6.03.04 <u>Processing the Application</u>.

      a.      <u>Applicant's Responsibility</u>.  The applicant shall deliver a completed application and supporting documentation to the Chief Executive Officer.  If there is any information which the applicant has failed to supply, or any document which the applicant has failed to attach which was requested, the Chief Executive Officer shall advise the applicant of the deficiency, and that failure of the applicant to correct the deficiency with ninety (90) days shall be deemed to be a voluntary withdrawal by the applicant of his application.  If the deficiencies noted are not corrected within such ninety-day period, the Chief Executive Officer shall notify the applicant of the withdrawal of his application.

      b.      <u>Submission of Application</u>.  The Chief Executive Officer shall forward the completed application and supporting documentation to the Chairman of the Credentials Committee for distribution to the chief of each section and chairman of each department in which the applicant seeks Privileges.  The Chief Executive Officer shall post a notice of each application for admission to the Medical Staff on the doctors' bulletin board.  The notice shall state that comments regarding the application should be directed to the Credentials Committee.

      c.      <u>Section Action</u>.  The chief of each clinical section in which the applicant seeks Privileges, or his designee shall review the application and supporting documentation, and may conduct a personal interview with the applicant.  A member of the Credentials Committee and the chairman of the appropriate department or his designee may participate in the interview.  The section chief shall, transmit to the Credentials Committee a written report containing specific recommendations regarding Medical Staff appointment and, if appointment is recommended, staff category, clinical Privileges to be granted, and any special conditions to be attached to the appointment.

      d.      <u>Department Action</u>.  The chairman of each department in which the applicant seeks Privileges shall review the application and supporting documentation, and transmit to the Credentials Committee a written report containing specific recommendations regarding Medical Staff appointment and, if appointment is recommended, Medical Staff category, clinical Privileges to be granted and any special conditions to be attached to the appointment.  The department chairman or his designee may, in formulating recommendations regarding appointment and privileges, meet with the applicant.  Such meeting shall be informal and will not constitute a hearing and will not be subject to the procedural requirements of Article IX of these Bylaws.

      e.      <u>Credentials Committee Action</u>.  The Credentials Committee shall review the application, the supporting documentation, the report and recommendations of each department chairman and section chief, the comments of the Medical Staff members, and such other information available to it that may be relevant to consideration of the applicant's qualifications for the Medical Staff category, department and clinical Privileges requested.  The Credentials Committee may make any further investigation of the applicant the Credentials Committee deems appropriate for forming its recommendation.  Such investigation may be conducted on behalf of the Credentials Committee by an ad hoc committee of the Credentials Committee or by individual

10

members of the Credentials Committee. Such investigation may include a meeting with the applicant, which meeting shall be informal and will not constitute a hearing and will not be subject to the procedural requirements of Article IX of these Bylaws.

Within ninety (90) days after receipt of the completed application and supporting documentation, the Credentials Committee shall transmit to the Medical Executive Committee a written report containing specific recommendations regarding Medical Staff appointment and, if appointment is recommended, Medical Staff category, clinical Privileges to be granted, and any special condition, including a preceptor requirement, to be attached to the appointment. The Committee may also recommend that the Medical Executive Committee defer action on the application. In the event that the Credentials Committee determines by resolution that it is unable to obtain the information it considers necessary to make a recommendation within the ninety-day time limit, an additional time period of up to sixty (60) days be allowed for completion of the report of the Credential Committee.

     f.     <u>Medical Executive Committee Action</u>. At its next regular meeting after receipt of the application and the report and recommendation of the Credentials Committee, the Medical Executive Committee shall consider the report and such other relevant information available to it. The Medical Executive Committee may make any further investigation of the applicant the Medical Executive Committee deems appropriate for forming its recommendation. Such investigation may be conducted on behalf of the Medical Executive Committee by an ad hoc committee of the Medical Executive Committee or by individual members of the Medical Executive Committee. Such investigation may include a meeting with the applicant, which meeting shall be informal and will not constitute a hearing and will not be subject to the procedural requirements of Article IX of these Bylaws. Unless deferred as provided below, within two(2) calendar months from the end of the calendar month in which the Medical Executive Committee receives the Credentials Committee report, the Medical Executive Committee shall transmit to the Board of Trustees, through the Chief Executive Officer, a written report containing the recommendation of the Medical Executive Committee as to staff appointment, reappointment, staff category, department affiliation and Privileges, and any special condition, including a preceptor requirement, to be attached to the grant. This written report shall state the reasons for each recommendation, supported by reference to the application and other documentation and information considered. The Medical Executive Committee may defer its recommendation with respect to the application for further investigation and deliberation for an additional period of sixty (60) days.

     6.03.05     <u>Communication of Recommendation of Medical Executive Committee</u>.

     a.     <u>Favorable Recommendation</u>. When the recommendation of the Medical Executive Committee is Favorable, the Chief Executive Officer shall promptly forward the recommendation, together with all supporting documentation, to the Board of Trustees

     b.     <u>Adverse Recommendation</u>. When the recommendation of the Medical Executive Committee is Adverse, with respect to either appointment or clinical Privileges, the Chief Executive Officer shall promptly inform the applicant by notice as provided in section 9.02.01. Thereafter, the procedures set forth in Article IX shall be followed until the Board of Trustees has made a final decision.

     6.03.06     <u>Board of Trustees Action</u>.

     a.     <u>On Favorable Medical Executive Committee Recommendation</u>. The Board of

−9373−

shall, in whole or in part, adopt or reject a Favorable recommendation of the Medical Executive Committee, or return the matter to the Medical Executive Committee for further consideration, stating the reasons for such referral and setting a time limit within which a subsequent recommendation shall be made by the Medical Executive Committee. If the recommendation of the Medical Executive Committee was Favorable, and the action of the Board of Trustees will be Adverse, the Chief Executive Officer shall promptly so inform the applicant by notice as provided for in section 9.02.01. Thereafter, the procedures set forth in Article IX shall be followed until the Board of Trustees has made a final decision.

      b.    <u>Without Benefit of Medical Executive Committee Recommendation</u>. If the Board of Trustees does not receive a Medical Executive Committee recommendation within a period of time provided for a recommendation from the Medical Executive Committee, the Board of Trustees shall give fifteen (15) days notice to the Medical Executive Committee. After such written notice from the Board of Trustees, the Board of Trustees may take action on its own initiative. If such action is Favorable, it shall become effective as the final decision of the Board of Trustees. If such action is Adverse, the Chief Executive Officer shall inform the applicant by notice as provided in section 9.02.01. Thereafter, the procedures set forth in Article IX shall be followed until the Board of Trustees has made a final decision.

      c.    <u>After Procedural Rights</u>. The Board of Trustees shall take final action with respect to an application only after the applicant has exhausted or waived his or her procedural rights as provided in Article IX. Action thus taken shall be the conclusive decision of the Board of Trustees, except that the Board of Trustees may defer final determination by referring the matter back to the Medical Executive Committee for further consideration.

      6.03.07    <u>Conflict</u>. In all cases where the last recommendation of the Medical Executive Committee is in conflict with the preliminary determination of the Board of Trustees, the conflict resolution provisions of section 6.05.02 shall be completed before the Board of Trustees takes final action.

      6.03.08    <u>Reapplication After Adverse Decision</u>. An applicant who has been denied Medical Staff membership or clinical Privileges shall not be eligible to reapply to the Medical Staff for a period of two (2) years from the final Adverse decision; provided, however, that the Board of Trustees may authorize an application to be submitted at any time. Any such reapplication shall be processed as an initial application, and the applicant shall submit such additional information as the Medical Staff or the Board of Trustees may require.

      6.03.09    <u>Term of Appointment</u>. Appointment to the Medical Staff shall be for a period of not more than eight (8) calendar quarters commencing on the first day of January, April, July, or October, except the Board of Trustees may extend the appointment of the Medical Staff Member if an extension is necessary to implement the quarterly reappointment procedure of the Medical Staff.

      6.04    <u>Procedure for Reappointment</u>.

      6.04.01    <u>Grouping of the Medical Staff</u>. When necessary, the Board of Trustees shall divide the Medical Staff into eight (8) approximately equal groups, the composition of which shall be determined by listing all of the Members alphabetically beginning with the letter A and assigning from the list in alphabetical order approximately one-eight (1/8) of the total number to each group. The members in the first group shall be those whose credentials shall be reviewed and recommended to the Board of Trustees for action at its December meeting in even years, and the Members in the second group at its December meeting in odd years. The members in the third group shall be those whose credentials shall be reviewed and recommended to the Board of Trustees for action at its March meeting in even years,

12

and the Members of the fourth group at its March meeting in odd years. The Members of the fifth group shall be those whose credentials shall be reviewed and recommended to the Board of Trustees for action at its June meeting in even years, and the Members in the sixth group at its June meeting in odd years. The members in the seventh group shall be those whose credentials shall be reviewed and recommended to the Board of Trustees for action at its September meeting in even years, and the Members in the eight group at its September meeting in odd years.

6.04.02    Reappointment Form. At least one hundred and twenty (120) days prior to the expiration of a Medical Staff Member's current appointment, the Chief Executive Officer shall forward to the Member a reappointment form approved by the Board of Trustees. At least ninety (90) days prior to the expiration of the Member's current appointment, the Member shall return the completed reappointment form to the Chief Executive Officer. No Staff Member will be considered for reappointment as provided in this section unless and until his completed reapplication form has been filed. A Staff Member who fails to file his completed reapplication form in a timely manner as prescribed by the Medical Staff shall be considered to have automatically resigned from the Medical Staff as of the expiration of his current appointment term, unless the Medical Executive Committee excuses such late filing.

6.04.03    Verification of Application for Reappointment. The Chief Executive Officer shall review each reapplication form and verify its completeness in the same manner as provided in section 6.03.04 (a). The Chief Executive Officer shall notify the Staff Member of any deficiencies, and the Staff Member shall correct such deficiencies within the time provided for submitting a completed application form. If the Staff Member had fewer than ten (10) patient admissions during the previous two years, the Chief Executive Officer will make inquiries regarding the Staff Member's Privileges and clinical practice at other facilities at which the Staff Member holds Privileges. Upon completion of the application and verification procedure, the Chief Executive Officer shall transmit the reapplication form and supporting documentation to the Chairman of the Credentials Committee.

6.04.04    Additional Information. In connection with a request for reappointment, each Staff Member shall be responsible for submitting such information and documentation as is reasonably requested by the Medical Staff or Board of Trustees, including but not limited to:

a.    Information and proof concerning the applicant's qualifications, competence and current health status, including information regarding professional training and experience, current licensure, current DEA registration, continuing medical education; malpractice insurance and history; and professional references familiar with the applicant's professional competence and character; and information which satisfies the requirements for the membership category for which the application is submitted; and

b.    Current information and history as to all professional disciplinary actions or licensure limitations; voluntary or involuntary termination of Medical Staff membership or voluntary or involuntary suspension, limitation, reduction, non-renewal, resignation or relinquishment of clinical privileges at another hospital or health care organization.

c.    Information as to whether any of the following has ever been suspended, revoked, denied, not renewed, or voluntarily resigned or relinquished; (1) membership or fellowship in a local, state or national professional organization; (2) specialty board certification; (3) license to practice any profession in any jurisdiction; (4) controlled substance registration certificate issued by the United States Department of Justice, Drug Enforcement Administration; or (5) license to prescribe controlled substance in any jurisdiction.

d.    Information as to whether the Medical Staff Member has been convicted of a

-9375-

felony.

6.04.05    Credentials Committee Action.  The Credentials Committee shall review the application and supporting materials using the same procedures and guidelines as are provided with respect to an initial application for appointment to the Medical Staff.  At least sixty (60) days prior to the expiration of the Medical Staff Member's current appointment, the Credentials Committee shall make a report to the Medical Executive Committee, recommending the reappointment or non-reappointment and the continuation or alteration or Privileges for the ensuing term.

6.04.06    Medical Executive Committee Action.  The Medical Executive Committee shall review the application and supporting materials using the same procedures and guidelines as are provided with respect to an initial application for appointment to the Medical Staff.  At least thirty (30) days prior to the expiration of the Medical Staff Member's current appointment, the Medical Executive Committee shall make its report to the Board of Trustees, through the Chief Executive Officer, recommending the reappointment or non-reappointment and the continuation or alteration of Privileges for the ensuing term.

6.04.07    Communication of Recommendation of Medical Executive Committee.

a.    Favorable Recommendation.  When the recommendation of the Medical Executive Officer shall promptly forward the recommendation, together with all supporting documentation, to the Board of Trustees.

b.    Adverse Recommendation.  When the recommendation of the Medical Executive Committee, either with respect to reappointment or clinical Privileges, is Adverse, the Chief Executive Officer shall promptly inform the Medical Staff Member by notice as provided in section 9.02.01.  Thereafter, the procedures set forth in Article IX shall be followed until the Board of Trustees has made a final decision.

6.04.08    Board of Trustees Action.

a.    On Favorable Medical Executive Committee Recommendation.  The Board of Trustees shall, in whole or in part, adopt or reject a Favorable recommendation of the Medical Executive Committee, or return the matter to the Medical Executive Committee for further consideration, stating the reasons for such referral and setting a time limit within which a subsequent recommendation shall be made by the Medical Executive Committee.  If the recommendation of the Medical Executive Committee was Favorable, and the action of the Board of Trustees will be Adverse, the Chief Executive Officer shall promptly so inform the applicant by notice as provided for in section 9.02.01.  Thereafter, the procedures set forth in Article IX shall be followed until the Board of Trustees has made a final decision.

b.    Without Benefit of Medical Executive Committee Recommendation.  The same procedures as contained in section 6.03.06 with respect to initial application shall apply.

c.    After Procedural Rights.  The Board of Trustees shall take final action with respect to an application for reappointment only after the Staff Member has exhausted or waived his or her procedural rights as provided in Article IX.  Action thus taken shall be the conclusive decision of the Board of Trustees, except that the Board of Trustees may defer final determination by referring the matter back to the Medical Executive Committee for further consideration.

d.    Conflict.  In all cases where the last recommendation of the Medical Executive

14

Committee is in conflict with the preliminary determination of the Board of Trustees, the conflict resolution provisions of section 6.05.02 shall be completed before the Board of Trustees takes final action.

6.04.09 _Extension of Appointment_. If an application for reappointment has not been fully processed by the expiration date of the Staff Member's appointment, the Staff Member shall maintain membership status and Privileges until such time as the processing is completed, unless the delay is due to the failure of the Staff Member to timely complete and return the completed application form or provide other documentation, in which case the appointment shall terminate. Any extension of an appointment pursuant to this section does not create a vested right in the Member for continued appointment through the entire next term, but only until such time as processing of the application is concluded.

6.05 _Provisions Applicable to Appointment and Reappointment_.

6.05.01 _Notice of Final and Favorable Decision_. Notice of a final and favorable decision of the Board of Trustees shall be given, through the Chief Executive Officer, to the Chief of the Medical Staff and to the applicant or Medical Staff Member, as applicable. The notice shall include the following:

a.      The Staff category to which the applicant or Staff Member is appointed.

b.      The department to which the applicant or Staff Member is assigned.

c.      The clinical Privileges granted.

d.      Any special conditions attached to the appointment.

6.05.02 _Conflict Resolution_. Whenever the Board of Trustees proposed final decision will be contrary to the last recommendation of the Medical Executive Committee, the Board of Trustees shall submit the matter to the Joint Conference Committee for further review and a recommendation. The Joint Conference Committee may invite an affected applicant or Staff Member to appear before or participate in the Joint Conference Committee proceedings and may also invite other individuals to appear before or participate in the Joint Conference Committee proceedings. In each case this appearance or participation shall be under such conditions as may be established by the Joint Conference Committee.

6.05.03 _Bases for Recommendation and Decision_. Each recommendation of the Credentials Committee and of the Medical Executive Committee and each decision of the Board of Trustees concerning appointment, reappointment privileges to be granted Privileges will be based upon:

a.      Professional competence and clinical judgment.

b.      Quality of care.

c.      Character and reputation.

d.      Ethics and conduct.

e.      Mental and physical health status

f.      Medical malpractice experience.

15

g.     Compliance with the rules and regulations of the Hospital

h.     Cooperation with Hospital personnel.

i.      Preparation of documentation required for third party payment.

6.05.04     Right to Single Hearing.  Notwithstanding any other provision contained in these Bylaws, an applicant with regard to whom the Medical Executive Committee makes as Adverse recommendation or the Board of Trustees renders an Adverse decision, shall be entitled to have only a single hearing on the matter pursuant to the procedures set forth in Article IX, and such applicant shall have no right to further appellate review.

6.05.05     Availability of Hospital Facilities.  In addition to the other factors for consideration, the Board of Trustees shall have the right to consider an application in the context of the ability of the Hospital to provide facilities and supportive services for the applicant and his or herpatients. Further, the need or absence of need for additional Staff Members with the skills and training of the applicant shall be valid matters for consideration by the Board of Trustees.

6.06     Leave of Absence.

6.06.01     Grant of Leave.  Leave of absence may be granted upon application to and  in discretion of the Medical Executive Committee, subject to approval by the Board of Trustees, for specified periods of time (not to exceed two years in total length) and for specific purposes, including but not limited to educational, teaching or research purposes or for personal reasons such as,  but not limited to, illness or absence from the community.

6.06.02     Duration of Leave.  No initial application for a leave of absence shall be for a period of longer than one year and no application for an extension of leave shall be for longer than one additional year.  Application for an extension must be made and approval granted prior to the expiration of the initial leave.  The Medical Staff appointment of a Staff Member who fails to return from a  leave of absence when scheduled shall automatically be terminated without right of further notification, appeal, hearing or review.

6.06.03     Return from Leave.  Prior to the end of the leave of absence, the Staff Member shall notify the Medical Executive Committee of the anticipated date of return and shall provide all information necessary for the Medical Executive Committee to verify the activities of the Staff Member during the leave and the current competence of the Staff Member.  In the Event of any doubt as to the current competence of the Staff Member, the Medical Executive Committee may refer the matter to the Credentials Committee for investigation and report.  If the doubt cannot be resolved, the Medical Executive Committee in its discretion may require a new application for appointment to the Medical Staff.

6.06.04     Military Leaves. Leaves of absence shall be granted to members of the Medical Staff for training or service in the Armed Forces of the United States, for the duration of such training and service, and any resulting hospitalization.  Continuation or renewal of Medical Staff membership and clinical privileges shall be granted in accordance with the provisions of federal law regarding veterans' reemployment rights, as if members of the Medical Staff were employees of the Hospital.

ARTICLE VII

16

## CLINICAL PRIVILEGES

7.01    Exercise of Privileges.  Every Practitioner practicing at the Hospital by virtue of Medical Staff membership shall, in connection with such practice, be entitled to exercise only those clinical Privileges specifically granted by the Board of Trustees, except as provided in sections 7.08 and 7.09 of these Bylaws.

7.02    Requests for Privileges.  Every application for Medical Staff appointment and reappointment must be accompanied by a request for the specific clinical Privileges desired by the Practitioner.  A request for increase in Privileges or for new or different Privileges must be supported by documentation of appropriate training or experience.

7.03    Basis for Privileges Determinations.  The evaluation of requests for clinical Privileges shall be based upon the Practitioner's education, training, experience, demonstrated professional competence and judgment, references and other relevant information, including an appraisal by the clinical section in which such Privileges are sought.  Periodic redetermination of clinical Privileges and increase or curtailment of the same made in connection with reappointment or otherwise shall be based upon direct observation of care provided, review of records of patients treated in this or other institutions, and review of the records of the Medical Staff which document the evaluation of the Member's participation in the delivery of medical care, as well as other reliable sources of information regarding the criteria listed above.  The Practitioner shall have the burden of establishing his or her qualifications and competency to exercise the clinical Privileges requested.

7.04    Privileges of Limited License Practitioners.  Dentists, podiatrists, and other limited license Practitioners may admit patients to the Hospital only if a physician (M.D. or D.O.) who is a Member of the Medical Staff is responsible for the general medical condition of each patient so admitted.  All patients of dentists, podiatrists, and other limited license Practitioners shall receive the same basic medical appraisal as patients admitted for other services.  Surgical procedures performed by dentists and podiatrists shall be under the overall supervision of the appropriate section chief.  A podiatrist, dentist, and other limited license Practitioner with clinical Privileges may discharge his or her patient with the concurrence of the member of the Medical Staff assigned to the medical management of the patient.

7.05    Procedure.  All requests for clinical Privileges shall be processed pursuant to the procedures outlined for Medical Staff appointment or reappointment.

7.06    Privileges During Provisional Appointment.  Privileges granted during provisional appointment to the Medical Staff may be subject to such proctoring, consultation, and comanagement requirements and procedures as the Board of Trustees shall from time to time determine are appropriate to assure that appropriate medical care is provided.  Privileges during provisional appointment to the Medical Staff shall automatically expire at the end of the provisional appointment, unless the Credentials Committee recommends appointment to the Medical Staff and continuation of Privileges, in which case provisional Privileges shall continue, as recommended, until final action is taken by the Board of Trustees, or until the Board of Trustees or Medical Staff committee to which the Board of Trustees delegates the authority terminates the provisional Privileges.

7.07    Report to Data Bank.

-9379-

7.07.01    Report of Final Decision.  If the final decision of the Board of Trustees adversely affects the Privileges of a Practitioner for longer than thirty (30) days and is based upon the competence or professional conduct of the Practitioner, the Chief Executive Officer shall report the decision to the National Practitioner Data Bank (the "Data Bank").  The report shall contain only the description of the decision as adopted by the Board of Trustees.  Any revision of the decision shall similarly reported.  Prior to sending the report to the Data Bank, the Chief Executive Officer shall notify the effected Practitioner of the report (or revision) and shall send a copy of the proposed report (or revision) to the Practitioner.

7.07.02    Dispute Regarding Report.  An applicant or a Medical Staff Member who is the subject of a report to the Data Bank may request an informal meeting to dispute the proposed report before it is filed.  The meeting shall not constitute a hearing and shall be limited to the issue of whether the report filed is consistent with the final action issued.  The meeting may be attended by the subject of the report, the Chief of Staff, the chairman of the Hospital department involved, and the Chief Executive Officer.  The applicant or Medical Staff Member who is the subject of a report to the Data Bank is entitled to file any dispute to the report permitted by the U.S. Department of Health and Human Services.

7.08    Temporary Privileges.

7.08.01    Circumstances.  Temporary Privileges may be granted in the following circumstances:

a.    Pendency of Application.  Upon receipt of an application for Medical Staff membership by an appropriately licensed Practitioner, the Chief Executive Officer may, upon the basis of reliable information then available regarding the competence and ethical standing of the applicant, and with the concurrence of the Medical Executive Committee, grant temporary admitting and clinical Privileges to the applicant for a period not to exceed thirty (30) days.  In exercising such Privileges, the applicant shall act under the supervision of the chief of the section to which the applicant is assigned.

b.    Care of Specific Patient.  Temporary clinical Privileges may be granted to a Practitioner who is not an applicant for membership by (I) the Chief of Staff or chairman of the department concerned, and (ii) the Chief Executive Officer or designee, for the care of a specific patient.

c.    Practitioner in Locum Tenens.  Upon verification of the credentials of the Practitioner by the Credentials Committee, and after approval of such credentials by either the Chief of Staff or the chairman of the department to which the Practitioner will be assigned, the Chief Executive Officer may grant temporary Privileges and the right to admit patients to a Practitioner who is serving as a Locum Tenens for a Staff Member for an initial period of not to exceed one (1) month.  The temporary Privileges may be extended for up to six (6) months.  Any extension shall require the approval of the Chief of Staff or the chairman of the department to which the Practitioner is assigned.

7.08.02    Conditions.  Temporary Privileges shall be granted only when the information available reasonably supports a favorable determination regarding the requesting Practitioner's qualifications, ability and judgment to exercise the Privileges requested.  Special requirements of supervision may be imposed on any Practitioner granted temporary Privileges.  Before temporary Privileges are granted, the Practitioner must acknowledge in writing that he or she has received and read the Medical Staff Bylaws and Rules and Regulations, and agrees to be bound by their terms in all matters relating to his or her exercise of Privileges.

-9380-

7.08.03    Termination.  Temporary Privileges granted pursuant to this section 7.08 shall terminate automatically upon discharge from the Hospital of the patient(s) whose hospitalization was the reason for the grant of temporary Privileges.  If it is determined at any time that the life or health of any patient would be endangered by continued treatment by a Practitioner with temporary Privileges, the temporary Privileges may be terminated immediately by a person entitled to impose a summary suspension pursuant to section 8.02.01 of these Bylaws.  The appropriate section chief, or, in the chief's absence, the appropriate department chairman, shall assign a Member of the Medical Staff to assume responsibility for the care of the patients of such terminated Practitioner until the patients are discharged from the Hospital.  The wishes of the patients shall be considered where feasible in the selection of a substitute Practitioner.  Temporary Privileges shall also be terminated by the Chief Executive Officer upon any failure by the Practitioner to comply with any conditions imposed upon the temporary Privileges.

7.08.04    Rights of Practitioner.  A Practitioner shall not be entitled to the procedural rights afforded by Article IX because of denial of a request for temporary Privileges or because of any termination or suspension of temporary Privileges.

7.09    Emergency Privileges.  In the case of emergency, any Member of the Medical Staff, to the degree permitted by his or her license, and regardless of department, service, staff status, or lack of it, or clinical Privileges, shall be permitted to do everything possible to save the life of a patient or to save a patient from serious harm, using every facility of the Hospital necessary, including the calling for any consultation necessary or desirable.  When an emergency situation no longer exists, such Medical Staff Member must request the Privileges necessary to continue to treat the patient.  In the event such Privileges are denied, or the Member does not desire such Privileges, the patient shall be assigned to an appropriate Member of the Medical Staff.  For the purpose of this section, an "emergency" is defined as a condition in which serious permanent harm would result to a patient or in which the life of a patient is in immediate danger and any delay in administering treatment would add to that danger.  In the event that the treating Practitioner in such emergency requires the assistance of a specially-trained physician, dentist or podiatrist licensed by the State of Michigan, the Practitioner may request emergency Privileges for a non-Medical Staff Member from the Chief Executive Officer, Chief of Staff, appropriate section chief or their respective designee.

## ARTICLE VIII

## CORRECTIVE ACTION AND SUMMARY AND AUTOMATIC SUSPENSION

8.01    Corrective Action.

8.01.01    Criteria for Initiation.  Whenever the physical or mental condition, or activities or professional conduct of any Practitioner with clinical Privileges are detrimental to patient safety or the delivery of quality patient care, or are disruptive or dangerous to the operations of the Hospital, or in violation of the Rules and Regulations of the Medical Staff or Hospital, corrective action against such Practitioner may be requested by any Member of the Medical Staff, the Chief Executive Officer, or by the Board of Trustees.  The Board of Trustees may also institute corrective action in a case in which the Chief of Staff does not do so, and any such action shall be processed in substantially the same manner as corrective action instituted pursuant to this Article VIII.

8.01.02    Requests and Notices.  All requests for corrective action shall be in writing, shall be made to Chief of Staff, and shall be supported by reference to the specific activities or conduct which constitute the grounds for the request.  The Chief of Staff shall promptly notify the Chief Executive

Officer, in writing, of all requests for corrective action received and shall keep the Chief Executive Officer fully informed of all actions taken in conjunction with such requests.

8.01.03    Action by the Chief of Staff.  The Chief of Staff shall, after consultation with the appropriate department chairman, Chairman of the Medical Ethics and Grievance Committee, and Chief Executive Officer, forward the written request for corrective action to the Medical Ethics and Grievance Committee within ten (10) days, or shall reject the request, if deemed necessary.

8.01.04    Investigation.  Upon receipt of the request for corrective action, the Medical Ethics and Grievance Committee shall make such further inquiries and conduct such investigation as it deems appropriate.  Such investigation shall include a report on the matter from the chairman of the department in which the questioned activities or conduct occurred.  The department chairman shall make a report to the Medical Ethics and Grievance Committee within thirty (30) days of the receipt of the request.  The Practitioner against whom corrective action has been requested shall have the opportunity for an interview with the Medical Ethics and Grievance Committee.  At such interview, the Practitioner shall be informed of the general nature of the charges under consideration by the Committee, and shall be invited to discuss, explain, or refute them.  This interview shall not constitute a hearing, shall be preliminary in nature, and none of the procedural rules provided in these Bylaws with respect to hearing and appellate review shall apply to this interview.

8.01.05    Medical Ethics and Grievance Committee Report.  Within thirty (30) days after the receipt of the report from the department chairman, the Medical Ethics and Grievance Committee shall make a written report of its investigation to the Medical Executive Committee.

8.01.06    Medical Executive Committee Recommendation.  Within fifteen (15) days following the receipt of the report from the Medical Ethics and Grievance Committee, the Medical Executive Committee shall transmit to the Board of Trustees, through the Chief Executive Officer, a written recommendation with respect to the request for corrective action.  The Medical Executive Committee may recommend any of the following:  that no action be taken; issuance of a warning or letter of reprimand; imposition of probation or a consultation requirement; reduction, suspension or revocation of clinical Privileges, or that the Practitioner's Medical Staff membership be terminated.

The Medical Executive Committee shall cause the Chief Executive Officer to notify the affected Staff Member in writing of its recommendation within ten (10) days from the date of committee action.  If the action involves the issuance of a warning, a letter of reprimand, or a term of probation, the action shall not be deemed Adverse, and the appellate procedures in Article IX shall not apply.  When the recommendation of the Medical Executive Committee would, if ratified by the Board of Trustees, result in reduction, suspension, or revocation of clinical Privileges, or termination of Medical Staff membership, the action shall be deemed Adverse, and the procedures set forth in Article IX shall be followed.

8.01.07    Board of Trustees Action.  The Board of Trustees shall adopt or reject the recommendation of the Medical Executive Committee.  If the Board of Trustees takes action Adverse to the Practitioner and there has been no prior Adverse recommendation of the Medical Executive Committee with respect to the matter, the procedures set forth in Article IX shall apply.

8.02    Summary Suspension.

8.02.01    Criteria and Initiation.  Whenever the conduct of a Practitioner requires that immediate action be taken to protect the life of any patient or to reduce the substantial likelihood of

20

-9382-

immediate injury or damage to the health or safety of any patient, employee or other person present in the Hospital, the chairman of any department, the Chief of Staff or designee, the Chief Executive Officer or the Board of Trustees shall have the authority to suspend all or any portion of the clinical Privileges of such Practitioner, and such summary suspension shall become effective immediately upon imposition.

8.02.02    Medical Executive Committee Consideration of Summary Suspension.  In any case in which a summary suspension is imposed, a meeting of the Executive Committee will be held within four (4) days to determine whether such suspension shall be continued.  The affected Staff Member shall be notified by the manner which will most expeditiously designed to give the Staff Member actual notice of the Medical Executive Committee meeting and shall be invited to appear before the meeting. This meeting shall not constitute a hearing, shall be informal in nature, and shall not be subject to the procedural rules specified in Article IX.  At the conclusion of this meeting, the Medical Executive Committee shall recommend either that the summary suspension be dissolved or that it continue it in effect as initially imposed or with such modifications as the Medical Executive Committee shall determine. During the consideration of the corrective action, the summary suspension shall remain in force, as it may have been modified by the Medical Executive Committee.  The Medical Executive Committee shall transmit to the Board of Trustees, through the Chief Executive Officer, a written report of the Medical Executive Committee's recommendation with respect to the summary suspension for the next regular meeting of the Board of Trustees.

8.02.03    Subsequent Action Regarding Summary Suspension.  The Medical Executive Committee shall cause the Chief Executive Officer to notify the affected Staff Member in writing of its recommendation within two (2) days of the date of the committee action.  Such notice shall be sent via regular and certified or registered mail and via commercial overnight delivery.  When the recommendation is Adverse, the procedures specified in Article IX shall be followed until a final decision is made by the Board of Trustees.

8.02.04    Continuation of Patient Care.  Upon the imposition of suspension, the Chief of Staff or his designated representative(s) shall arrange for alternate medical coverage for the patient(s) of the suspended Staff Member in the Hospital.  In making such arrangements, due regard shall be given to the wishes of each such patient.

8.03    Automatic Suspension.

8.03.01    Triggering Events.  Appointment to the Medical Staff, as well as clinical Privileges, shall be automatically suspended or terminated upon the occurrence of the following events:

a.    Delinquent Medical Records.  Failure to complete all patient medical records within the time specified in the Rules and Regulations shall automatically cause suspension of the Privileges of the involved Staff Member.  If the delinquent medical records are not completed within the time permitted in the Rules and Regulations, the Medical Staff membership and Privileges of the Staff Member involved shall be terminated upon approval of the Medical Executive Committee and the Board of Trustees in accordance with the procedures contained in the Rules and Regulations, and the affected Staff Member shall not have the right to the appellate procedure of Article IX of the Medical Staff Bylaws.

b.    Absences from Meetings.  A temporary suspension of a Practitioner's Privileges shall be automatically imposed for fourteen (14) days, effective on the first day of reappointment, if Practitioner failed to attend fifty percent (50%) of all meetings, including Medical Staff, committee, department and clinical sections that he/she is assigned to.

21

c.    License.  Action by a state licensing board revoking or suspending a Practitioner's  license shall automatically cause suspension of the Practitioner's Medical Staff Membership and Hospital Privileges, and such suspension shall be promptly reported to the appropriate state licensing board.  If the Practitioner's license has expired without being renewed or extended as the result of inadvertence or mistake, the Practitioner's Medical Staff membership and clinical Privileges shall be automatically reinstated upon proof of the renewal or extension of the Practitioner's license within ninety (90) days of its expiration.  If the Practitioner's license is restored more than ninety (90) days after its expiration or is restored after it has been revoked or expiration or is restored after it has been revoked or suspended, then the Practitioner may request that the suspension be terminated by filing an application for reappointment in accordance with the procedures of section 6.04.  Thereafter, the request for termination of the suspension shall be considered in the same manner and with the same criteria as an application for reappointment.

d.    Third Party Payment.  A Practitioner's Medical Staff membership and clinical Privileges shall be automatically suspended for a period determined by the Medical Executive Committee, if the Practitioner receives three (3) written warnings from the Hospital within a twelve (12) month period regarding failure to complete documentation required for third party payment or failure to cooperate with Hospital personnel in dealing with utilization review bodies.

e.    Termination of Contract.  When a member of the Medical Staff (or a corporation, partnership or other entity by which a Medical Staff Member is employed or retained) is designated by virtue of a contract with the Hospital to furnish administrative and/or clinical services, that designation may be terminated solely according to the terms of the contract.  Termination of such a contract with the Hospital or termination of a Medical Staff Member's relationship with the contracting entity shall not entitle the Member to a hearing or appeal pursuant to these Bylaws.  Termination of such a contract with the Hospital shall have no automatic effect upon the Staff Member's Medical Staff membership or Privileges, unless the contract so provides, in which case the contract controls over any right to hearing or appeal provided in these Bylaws.

8.03.02    Notice of Automatic Suspension.  The Chief Executive Officer shall notify the affected Practitioner of the automatic suspension and the reasons thereof.

8.03.03    Results of Automatic Suspension.  Upon the imposition of automatic suspension and until the automatic suspension has been rescinded, the Practitioner shall not be entitled to exercise any voting rights associated with Medical Staff membership and shall not be entitled to exercise his or her clinical privileges.

8.03.04    Enforcement.  It shall be the duty of the Chief of Staff to cooperate with the Chief Executive Officer in enforcing all automatic suspensions.

8.03.05    Procedural Rights.  A Medical Staff Member whose Medical Staff membership or clinical Privileges have been automatically suspended shall not be entitled to any of the procedural rights set forth in Article IX.

8.03.06    Continuation of Patient Care.  Upon the imposition of automatic suspension, the Chief of Staff or his designated representative(s) shall arrange for alternate medical coverage for the patient(s) of the suspended Staff Member in the Hospital.  In making such arrangements, due regard shall be given to the wishes of each such patient.

8.04    Termination by Board of Trustees.  In conjunction with its responsibility for the quality of care rendered at the Hospital and for the actions of the personnel at the Hospital, it is recognized that the

-9384-

Board of Trustees may, pursuant to the Hospital's Bylaws, in its sole judgment, remove a Staff Member from the Medical Staff and terminate the Staff Member's Privileges, if in the sole judgment of the Board of Trustees, the welfare of the Hospital or the care of its patients requires such action; provided, however, such removal and termination shall be subject to the rights of hearing and appellate review afforded to the staff Member in Article IX of these Bylaws.

ARTICLE IX

HEARING AND APPELLATE REVIEW

9.01    Right to Hearing and Appellate Review.

9.01.01    Following Adverse Recommendation.  Except as otherwise provided in these Bylaws, any Practitioner who receives notice of a recommendation of the Medical Executive Committee that, if ratified by decision of the Board of Trustees, would be Adverse, shall be entitled to a hearing before an ad hoc hearing committee of the Medical Staff.  If the recommendation of the Medical Executive Committee following such hearing is still adverse to the affected Practitioner (other than an initial applicant for Medical Staff membership), the Practitioner shall then be entitled to an appellate review by the Board of Trustees or committee thereof, before the Board of Trustees makes final decision on the matter.

9.01.02    Without Adverse Recommendation.  No adverse decision shall be adopted by the Board of Trustees that is contrary to a Favorable recommendation of the Medical Executive Committee or that is not based upon a prior Adverse recommendation by the Medical Executive Committee, until the Practitioner involved has been notified that he or she is entitled to, and has been afforded, a hearing, pursuant to section 9.04.02 of these Bylaws.  The Practitioner (other than an initial applicant for Medical Staff membership) is entitled to an appellate review by the Board of Trustees or a committee thereof if the Board of Trustees' decision is adverse following such hearing.

9.01.03    Procedural Safeguards.  All hearings and appellate reviews shall be conducted in accordance with the procedural safeguards set forth in this Article IX.

9.02    Initiation of Hearing.

9.02.01    Notice of Adverse Recommendation or Action.  A Practitioner against whom an Adverse recommendation has been made by the Medical Executive Committee or Adverse action is to be taken by the Board of Trustees shall promptly be given notice of such recommendation or proposed action.  Such notice shall:

a.    Be given by the Chief Executive Officer.

b.    Be mailed to the addressee by certified mail or delivered in person to the addressee

c.    Advise the Practitioner that an Adverse recommendation has been made or that an Adverse action is to be taken.

d.    State the reasons for such recommendation or action.

23

e.   Advise the Practitioner of the right to request hearing pursuant to the provisions of Article IX of these Bylaws.

f.   State that failure to request a hearing within the specified time period shall constitute a waiver of rights to a hearing and to an appellate review of the matter.

g.   Contain a summary of the Practitioner's hearing rights.

9.02.02  <u>Request for Hearing</u>.  A Practitioner shall have thirty (30) calendar days following receipt of notice given pursuant to section 9.02.01 to file a written request for a hearing.  Such request shall be delivered to the Chief Executive Officer either in person or by certified mail and shall include the mailing address of the Practitioner.

9.02.03  <u>Waiver by Failure to Request a Hearing</u>.  The failure of a Practitioner to request a hearing to which he or she is entitled by these Bylaws within thirty (30) days following receipt of notice given in a manner specified in section 9.02.01 shall conclusively be deemed a waiver of the right to such hearing and to any appellate review to which the Practitioner might otherwise have been entitled on the matter.  Such waiver in connection with:

a.   A proposed Adverse action by the Board of Trustees shall constitute acceptance of that action, and such action shall become effective immediately as the final decision of the Board of Trustees; and

b.   An Adverse recommendation by the Medical Executive Committee shall constitute acceptance of that recommendation, which shall thereafter be transmitted to the Board of Trustees.

9.03  <u>Notice of Hearing</u>.  Within fifteen (15) days after receipt of a timely request for hearing from a Practitioner, the Medical Executive Committee or the Board of Trustees, whichever is appropriate, shall schedule and arrange for such a hearing and shall, through the Chief Executive Officer, notify the Practitioner of the time, place and date of the hearing and of the witnesses expected to testify at the hearing against the Practitioner.  Notice shall be mailed to the Practitioner by certified mail or delivered in person.  The hearing date shall not be less than thirty (30) days after the date of the notice of hearing; provided, however, that a Practitioner who is under suspension then in effect may waive in writing this requirement, and upon such waiver, a hearing shall be held as soon as arrangements may reasonably be made.  In any event, not less than seven (7) days prior to the hearing date, the Practitioner shall furnish the Medical Executive Committee or Board of Trustees, as appropriate, with the names of the witnesses the Practitioner plans to call at the hearing.

9.04  <u>Composition of the Hearing Committee</u>.

9.04.01  <u>Adverse Recommendation of Medical Executive Committee</u>.  When the hearing relates to an Adverse recommendation of the Medical Executive Committee, such hearing shall be conducted by one of the following, appointed by the Medical Executive Committee: (a) an ad hoc hearing committee of not less than five (5) members of the Medical Staff, one of whom shall be designated as Chairman of the committee; or (b) a hearing officer.  If a hearing officer is used, he or she shall be an individual whose training and/or experience qualify him or her to evaluate the matters at issue.  The hearing officer may, but not need to be a physician.  In cases where a hearing officer is appointed to conduct a hearing, any references throughout this Article IX to the hearing committee shall apply equally to the hearing officer.  An individual who has actively participated in the consideration of the Adverse

24

recommendation or who is in direct economic competition with the affected Practitioner shall not be appointed as a member of the hearing committee or as a hearing officer.

      9.04.02    Adverse Decision of Board of Trustees.  When a hearing relates to a proposed Adverse decision of the Board of Trustees that is contrary to a Favorable recommendation of the Medical Executive Committee or that is not based on a prior Adverse recommendation by the Medical Executive Committee, consisting of not less than five (5) (of whom two (2) members may be appointed by the Medical Executive Committee) members, one of whom shall be designated by the committee as chairman; or (b) a hearing officer, to conduct such hearing.  In  cases where a hearing officer is appointed to conduct a hearing, any references throughout this Article IX to the hearing committee shall apply equally to the hearing officer.  An individual who is in direct economic competition with the affected Practitioner shall not be appointed as a member of the hearing committee or as a hearing officer.

    9.05    Conduct of Hearing.

      9.05.01    Presence of Committee Members.  There shall be at least a majority of the members of the ad hoc hearing committee present throughout the hearing and deliberations, and no member shall vote by proxy.  A committee member who is absent from any part of the hearing shall not be permitted to participate in the deliberations or the decision.  An individual who is not a member of the committee may not participate in its deliberations.

      9.05.02    Personal Presence of Practitioner.  The personal presence of the Practitioner for who the hearing has been scheduled shall be required.  A Practitioner who fails without good cause, as determined by the hearing committee, to appear and proceed at such hearing shall be deemed to have waived his or her rights in the same manner as provided in section 9.02.03 and to have accepted the Adverse recommendation or action.

      9.05.03    Record of Hearing.  An accurate record of the hearing shall be made in a manner determined by the ad hoc hearing committee.  Use of either a court reporter or an electronic recording unit is permissible.  The Practitioner who is the subject of the hearing shall have the right to obtain copies of the record upon payment of a reasonable fee for preparation of the record.

      9.05.04    Postponement.  Postponement of a hearing shall be made only with the approval of the ad hoc hearing committee.  A postponement shall be granted only for good cause shown, as determined solely by the hearing committee.

      9.05.05    Representation.  The Practitioner who requested the hearing shall be entitled to be accompanied and represented at the hearing by an attorney or other person of the Practitioner's choice.  If the Practitioner wishes to be represented by an attorney at the hearing, his or her written request for a hearing must so state.  The Medical Executive Committee or Board of Trustees, depending on whose recommendation or action prompted the hearing, shall be entitled to be represented at the hearing by an attorney or other person of their choice.

      9.05.06    Presiding Officer.  The Chairman of the hearing committee, or designee, shall preside over the hearing, determine the order of procedure during the hearing, facilitate the presentation of relevant oral and documentary evidence by all participants, and maintain decorum.

      9.05.07    Procedure and Evidence.  The hearing need not be conducted strictly according to rules of law relating to the examination of witnesses or presentation of evidence.  Any evidence determined relevant by the presiding officer shall be considered, regardless of the existence of any common law or statutory rule which might make such evidence inadmissible over objection in a civil or

-9387-

criminal action. The Practitioner for whom the hearing is being held shall, prior to, during, or at the close of the hearing, be entitled to submit memoranda concerning any issue or procedure or fact, and such memoranda shall become a part of the hearing record.

9.05.08    Burden of Proof. The affected Practitioner shall be responsible for supporting his or her challenge to the Adverse recommendation or action by showing that the recommendation or decision lacks any factual basis or that such recommendation or action is otherwise arbitrary or capricious.

9.05.09    Rights of the Parties. The parties shall have the right to: (a) call, examine, and cross-examine witnesses; (b) introduce written evidence and exhibits; (c) challenge any witness; and (d) rebut any testimony or other evidence. If the Practitioner does not testify on his or her own behalf, the Practitioner may be called and examined as if under cross-examination.

9.05.10    Recess and Adjournment. The hearing committee may, without special notice, recess the hearing and reconvene it for the convenience of the participants or for the purpose of obtaining new or additional evidence or consultation. Upon conclusion of the presentation of oral and written evidence, the hearing shall be closed. The hearing committee may thereupon, at a time convenient to itself, conduct its deliberations outside the presence of the Practitioner for whom the hearing was convened.

9.06    Hearing Committee Report and Further Action.

9.06.01    Hearing Committee Report. Within fourteen (14) days after the close of the hearing, the hearing committee shall make a written report and recommendation and shall forward the same, together with the hearing record and all other documentation, to the Medical Executive Committee or to the Board of Trustees, whichever appointed it. The report may recommend confirmation, modification, or rejection of the original Adverse recommendation of the Medical Executive Committee or proposed Adverse action of the Board of Trustees. The Chief Executive Officer shall send a copy of the hearing committee's written recommendation, including a statement of the basis for the recommendation, together with notice of the Practitioner's right to appellate review, if any, to the Practitioner by first-class mail within ten (10) days of the hearing committee's report.

9.06.02    Action on Hearing Committee Report. Within thirty (30) days after receipt of the report of the hearing committee, and if the affected Practitioner has not initiated appellate review of the recommendation, if appellate review is available, the Medical Executive Committee or Board of Trustees, as appropriate, shall consider the report and affirm, modify or reverse its recommendation or action in the matter. Notice of this action by the Medical Executive Committee or Board of Trustees shall be delivered promptly to the affected Practitioner in person or by certified mail, return receipt requested.

9.07    Initiation of Appellate Review.

9.07.01    Request for Appellate Review. A practitioner (other than an initial applicant for Medical Staff membership) who receives notice of an Adverse Recommendation or decision made or adhered to after a hearing shall have ten (10) days after receipt of such notice to request in writing an appellate review by the Board of Trustees or by a duly appointed review committee of the Board.

9.07.02    Waiver of Appellate Review. The failure of a Practitioner to request appellate review within ten (10) days following receipt of notice given in the manner specified in 9.06.01 shall conclusively be deemed a waiver of the right to appellate review.

-9388-

9.07.03    <u>Notice of Time and Place for Appellate Review</u>.  Within ten (10) days after receipt of a timely written request for appellate review, the Board of Trustees shall schedule a date for such review, including a time and place for oral statements if such has been requested, and shall notify the practitioner, through the Chief Executive Officer, by written notice delivered in person or sent certified mail, return receipt requested.  The date of the appellate review shall not be less than three (3) days, nor more than thirty (30) days, from the date of the notice of the time and place for appellate review, except that when the Practitioner requesting review is under a suspension which is then in effect, such review shall be scheduled as soon as the arrangements for it may reasonably be made, but not more than thirty (30) days from the date of receipt of such request.

9.07.04    <u>Appellate Review Body</u>.  The appellate review shall be conducted by the Board of Trustees or by a duly appointed review committee consisting of not less than three (3) members of the Board of Trustees.


9.08    <u>Appellate Review Procedure</u>.

9.08.01    <u>Nature of Proceedings</u>.  The appellate review shall be held only on the record on which the adverse recommendation or decision is based, the record created in connection with the hearing, and the Practitioner's written statement as provided in section 9.08.03.  The Practitioner may also request that oral statements be permitted as part of the appellate review.

9.08.02    <u>Access to Record</u>.  The Practitioner shall have access to the report and record (and transcription, if any) of the ad-hoc hearing committee.

9.08.03    <u>Written Statement</u>.  The Practitioner may submit a written statement, in which those factual and procedural matters with which the Practitioner disagrees, and the reasons for such disagreement, shall be specified.  This written statement may cover any matters raised at any step in the procedure to which the appeal is related, and shall be submitted to the Board of Trustees through the Chief Executive Officer, delivered in person or by certified mail, return receipt requested, at least ten (10) days prior to the scheduled date for the appellate review.  A similar statement may be submitted by the Medical Executive Committee or by the Chairman of the Hearing committee appointed by the Board of Trustees, and, if submitted, the Chief Executive Officer shall deliver a copy thereof to the Practitioner in person or by certified mail, return receipt requested at least five (5) days prior to the date of such appellate review.

9.08.04    <u>Nature of Review</u>.  The Board of Trustees or its appointed review committee shall act as an appellate body and as such shall determine whether the adverse recommendation or decision lacked any factual basis or was otherwise arbitrary or capricious.

9.08.05    <u>Oral Statements</u>.  If oral statements are requested as part of the review procedure, the affected Practitioner shall be permitted to make a statement to the appellate review body against the adverse recommendation or decision, and shall answer questions posed by any member of the appellate review body.  The Medical Executive Committee or the Board of Trustees, whichever is appropriate, shall also be represented by an individual who shall be permitted to speak in favor of the adverse recommendation or decision, and who shall answer questions posed by any member of the appellate review body.

9.08.06    <u>Consideration of New or Additional Matters</u>.  New or additional matters not raised during the original hearing or in the hearing committee report, and not otherwise reflected in the

-9389-

record, shall not, as a general rule, be introduced at the appellate review. The appellate review body may, in its sole discretion, permit a new matter to be considered, but only under highly unusual circumstances.

9.08.07    Action Taken.

a.    By Board of Trustees.  If the appellate review is conducted by the Board of Trustees, it may affirm, modify or reverse its prior decision or the recommendation of the Medical Executive Committee, as the case may be. Before taking such action, the Board of Trustees may, in its discretion, refer the matter back to the Medical Executive Committee for further review and recommendation. Such referral may include a request that the Medical Executive Committee arrange for a further hearing to resolve specified disputed issues.

b.    By a Committee of the Board of Trustees.  If the appellate review is conducted by a committee of the Board of Trustees, such committee shall, within fourteen (14) days after the scheduled or adjourned date of the appellate review, make a written report recommending that the Board of Trustees either affirm, modify or reverse its prior decision or the recommendation of the Medical Executive Committee. Alternatively, the appellate review committee may refer the matter back to the Medical Executive Committee for further review and recommendation. Such referral may include a request that the Medical Executive Committee arrange for a further hearing to resolve disputed issues. Within ten (10) days after receipt of the recommendation of the Medical Executive Committee, if requested, the appellate committee shall make its recommendation to the Board of Trustees as above provided.

9.08.08    Conclusion.  The appellate review shall not be deemed to be conclu▓▓▓▓▓ all of the procedural steps set forth in Sections 9.07 and 9.08 have been completed or waived.

9.08.09    Final Decision by the Board of Trustees.  Within thirty (30) days after conclusion of the appellate review, the Board of Trustees shall make its final decision in the matter and shall send notice thereof to the Medical Executive Committee and, through the Chief Executive Officer, to the affected Practitioner, in person or by certified mail, return receipt requested.

9.09    Number of Hearings and Reviews.  Notwithstanding any other provision of these Bylaws, no Practitioner shall be entitled to more than one hearing and more than one appellate review in any matter which shall have been the subject of action by the Medical Executive Committee, or by the Board of Trustees, or by a duly authorized committee of the Board of Trustees. An adverse recommendation with respect to an initial application for Medical Staff membership shall give rise to a right to no more than one hearing and to no right to appellate review.

## ARTICLE X

## OFFICERS OF THE MEDICAL STAFF

10.01    Officers of the Medical Staff.  The officers of the Medical Staff shall be the Chief of Staff and Vice Chief of Staff. Each officer must be an Active Staff Member in good standing at the time of nomination and election and must remain an Active Staff Member in good standing during his term of office. Failure to maintain such status shall immediately create a vacancy in the office. The Chief of Staff and the Vice Chief of Staff shall be elected by the Medical Staff, subject to approval by the Board of Trustees. Officers shall be elected by majority vote of the Active Staff members present at a Medical Staff meeting at which there is quorum. Officers shall be elected from a slate of candidates presented by the Nominating Committee and any other candidates nominated from the floor by the Active Staff.

-9390-

10.02    Term of Office.  The Medical Staff officers shall serve for a term of two years, but shall remain in office until a successor is elected.  An officer may not be elected to the same position for two successive terms.

10.03    Election of Officers.

10.03.01    Nomination.  Candidates for office may be nominated by either of the following procedures:

a.    At least twenty-one days before the annual meeting, the Nominating Committee, through its chairperson, shall present to the Medical Staff, the names of one nominee for each office.  Prior to presenting nominees to the Medical Staff, the Nominating Committee shall determine the willingness of each nominee to serve in the designated office.  If, before the election, any of the individuals nominated for an office shall refuse, be disqualified from, or otherwise be unable to accept, nomination, the Nominating Committee shall submit a substitute nominee at the annual meeting.

b.    Members of the Active Medical Staff may make nominations from the floor at the annual meeting.  However, a floor nomination shall not be accepted if the nominee is absent from the meeting, unless the nominee has confirmed in writing, before the meeting, his willingness to serve in the office for which he has been nominated.

c.    All nominees for election or appointment to Medical Staff offices, department chairmanships or the Medical Executive Committee shall, at least twenty (20) days prior to the date of election or appointment, disclose in writing to the Medical Executive Committee and the Board of Trustees those personal, professional, or financial affiliations or relationships of which they are reasonably aware which their activities or responsibilities on behalf of the Medical Staff.

10.03.02    Election.  Only members of the Active Medical Staff shall be eligible to vote in this election.  Voting shall be by secret written ballot.  A nominee shall be elected upon receiving a majority of more than fifty percent (50%) of the valid votes cast.  If no candidate for the office receives a majority vote on the first ballot, a runoff election shall then be held between the two candidates receiving the highest number of votes.  After election, the officers of the Medical Staff shall be presented to the Board of Trustees.  If the Board of Trustees has concerns regarding the election of any officer, such concerns shall be submitted to the Joint Conference Committee for review and a recommendation.

10.03.03    Method for Removal of an Officer of the Medical Staff.  Removal of an elected officer of the Medical Staff during his/her term of office may be brought about by either of the following methods:

a.    A two-thirds (2/3) majority vote of all Active Medical Staff members in a regular or special Medical Staff meeting at which there is a quorum.  Members of the Active Medical Staff will be notified in writing, of such special agenda items fourteen (14) days prior to the day of the meeting.  Such removal shall become effective upon approval by the Board of Trustees.  If the Board of Trustees does not approve the removal, the removal shall be submitted to the Joint Conference Committee for review and a recommendation prior to final decision by the Board of Trustees.

b.    The Medical Executive Committee may, by a vote of three-fourths of the votes

cast, recommend to the Board of Trustees the removal of any officer of the Medical Staff if, in the Medical Executive Committee's judgment, the Hospital's best interest would be served thereby. Such removal shall become effective upon approval by the Board of Trustees. If the Board of Trustees does not approve the removal, the removal shall be submitted by the Board of Trustees to the Joint Conference Committee for review and a recommendation.

10.03.04   <u>Grounds for Removal of an Officer of the Medical Staff.</u>  An officer of the Medical Staff may be removed from office, if the individual is unable to perform the duties and responsibilities of the office, and if the individual has failed to perform the duties and responsibilities of the office, or if the individual fails to continue to be qualified for the office, as stated in Section 10.03.03

10.03.05   <u>Vacancies in Office.</u>  The Medical Staff shall fill any vacancies in office for the remainder of the applicable term, unless the vacancy is in the office of Chief of Staff. If there is a vacancy in the office of the Chief of Staff, the Vice-Chief of Staff shall serve as Chief of Staff for the remainder of the term. The Medical Staff shall fill the vacancy thus created in the office of Vice-Chief of Staff by a special meeting of the Medical Staff or at the next regular meeting of the Medical Staff, at the discretion of the Chief of Staff. The election shall follow the general mechanism for nomination and election.

10.04   <u>Chief of Staff.</u>

The Chief of Staff shall:

a.   Call and preside at all meetings of the Medical Staff and Medical Executive Committee;

b.   Be a member ex-officio of all Medical Staff committees;

c.   If approved by the Board of Trustees, be a voting member of the Board of Trustees;

d.   Have general supervision over the professional work of the Medical Staff;

e.   Advise and cooperate with the Chief Executive Officer and the administrative staff;

f.   Be responsible and accountable to the Board of Trustees;

g.   Maintain liaison with the Board of Trustees and, as appropriate, the board of the Hospital's parent corporation;

h.   Be responsible for enforcement of the Hospital Bylaws and Rules and Regulations, insofar as they pertain to the functions of the Medical Staff;

I.   Cooperate with the Chief Executive Officer and the administrative staff in maintaining an appropriate standard of patient care at all Hospital facilities;

j.   Be responsible to see that appropriate continuing medical education opportunities are available; and

k.   Appoint all committees of the Medical Staff.

-9392-

10.05   <u>Vice Chief of Staff</u>.  The Vice Chief of Staff, in the absence of the Chief of Staff, shall assume all of the duties and authority of the Chief of Staff.


ARTICLE XI

MEDICAL EXECUTIVE COMMITTEE

11.01   <u>Composition of Medical Executive Committee</u>.  The Medical Executive Committee shall consist of the following:  the Chief of Staff (who shall serve as chairman, but who shall not vote, except in the case of a tie); the Vice Chief; the chairman of each clinical department; the Chairman of the Credentials Committee; the Chairman of the Quality Management and Utilization Review Committee; one (1) administrative representative (either the Chief Executive Officer or his or her designee), who shall serve ex officio, without vote; and two (2) at-large individuals elected from the Active Staff.  One (1) of the Active Staff representatives on the Medical Executive Committee shall serve for one (1) year initially, and the other one (1) for two (2) years.  Thereafter, the term of each such Active Staff member shall be for two (2) years.  No chairman of any clinical department shall serve on the Medical Executive Committee in two (2) capacities and, if necessary, additional members of the Medical Executive Committee shall be elected from the Active Staff.  In the event the members of the Medical Executive Committee numbers fewer than nine individuals, the Medical Executive Committee may, in its discretion, arrange an election of additional at-large member(s) of the Medical Executive Committee.

11.02   <u>Duties of Medical Executive Committee</u>.  The duties of the Medical Executive Committee shall include, but not be limited to: acting for the Medical Staff in the intervals between meetings of the Medical Staff and making recommendations to the Board of Trustees regarding the structure of the Medical Staff, mechanisms for reviewing credentials and for delineating Privileges, Medical Staff membership and Privileges of individual Practitioners, mechanisms for quality assessment activities of the Medical Staff, mechanisms through which Medical Staff membership may be terminated, and mechanisms for fair hearing procedures, and other matters requested.

11.03   <u>General Powers of the Medical Executive Committee</u>.  The Medical Executive Committee shall be the Executive Committee of the Medical Staff.  The Medical Executive Committee's action shall be binding on the Medical Staff; provided, however, that a 2/3 majority of the Active membership present at a Medical Staff meeting at which there is a quorum shall be sufficient to reverse a decision of the Medical Executive Committee, except in the case of decisions relating to clinical Privileges or Medical Staff membership.  In the event that the Active Staff shall overrule the Medical Executive Committee, then the Active Staff's action shall become binding upon the Medical Executive Committee, subject to ratification by the Board of Trustees where required.

11.04   <u>Vacancies on Medical Executive Committee</u>.  In the event of a vacancy occurring on the Medical Executive Committee, including a vacancy necessitated by the creation of a new department, other than a vacancy in the position of Chief of Staff and Vice Chief of Staff, the Chief of Staff shall appoint a replacement from the Active Staff to the vacancy on the Medical Executive Committee for the remainder of the term.  The Vice Chief of Staff shall become the Chief of Staff in the event the Chief of Staff is unable to continue to serve the full term for any reason.  Any vacancy created in the office of the Vice Chief shall be filled by election at a special meeting of the Medical Staff or at the next regular Medical Staff meeting at the discretion of the Chief of Staff, subject to the approval of Board of Trustees of the individual so elected.

31

-9393-

11.05   Meetings of the Medical Executive Committee.  The Medical Executive Committee shall meet at least four (4) times per year.

ARTICLE XII

COMMITTEES OF THE MEDICAL STAFF

12.01   Standing Committees.  In addition to the Medical Executive Committee, the standing committees of the Medical Staff shall be:

      a.    Bio-ethics Committee/Investigational Review Board;

      b.    Bylaws and Rules and Regulations Committee;

      c.    Cancer Committee;

      d.    Continuing Medical Education/Library Committee;

      e.    Credentials Committee;

      f.    ICU/CCU Committee;

      g.    Infection Control Committee;

      h.    Joint Conference Committee;

      I.    Medical Ethics and Grievance Committee;

      j.    Medical Records Committee;

      k.    Joint Nominating Committee;

      l.    Pharmacy and Therapeutics Committee;

      m.    Quality Management and Utilization Review Committee; and

      n.    Tissue Committee.

12.02   Additional Committees.  Additional standing committees and special committees may be formed and act as determined by the Medical Executive Committee.

12.03   Members.

12.03.01   Term.  Members of each committee shall be appointed for one Medical Staff Year by the Chief of Staff, with no limitation on the number of terms they may serve, except where expressly restricted.

12.03.02   Members of Medical Staff.  All committee members (except where otherwise noted) shall be Members of the Medical Staff.

32

12.03.03    <u>Removal and Appointment</u>.  All appointed committee members may be removed and/or vacancies filled by the Chief of Staff at his or her discretion.

12.03.04    <u>Chief of Staff</u>.  The Chief of Staff is an ex-officio member (without vote) on all Medical Staff committees.

12.04    <u>Chairman</u>.

12.04.01    <u>Members of Medical Staff</u>.  All committee chairmen shall be members of the Active Staff.

12.04.02    <u>Term</u>.  Chairmen are appointed by the Chief of Staff for one Medical Staff Year, with no limitation on the number of terms they may serve.

12.05    <u>Meetings</u>.

12.05.01    <u>Frequency</u>.  Any committee may meet as often as is determined necessary by the chairman, as long as the minimum frequencies specified in these Bylaws or the Rules and Regulations are met.

12.05.02    <u>Quorum</u>.  A quorum is reached when twenty-five percent (25%) of the voting members of a committee (except Medical Executive Committee and Medical Ethics and Grievance Committee), but not less than two members, are present at any committee meeting, unless any provision of law, of these Bylaws, or of the Rules and Regulations require a higher percentage to establish a quorum.

Fifty percent (50%) of the voting members will constitute a quorum in Medical Executive Committee and Medical Ethics and Grievance Committee meeting.  Thirty-Three percent (33%) of the voting members will constitute a quorum in Department Meetings.

12.05.03    <u>Abstention</u>.  In any instance where a member of the committee has a conflict of interest in any matter coming before the committee, that member shall not participate in a vote on the matter.

12.05.04    <u>Minutes</u>.  Minutes of each meeting shall be prepared and include a record of attendance and votes/action taken on each matter.  A permanent file shall be maintained.

12.06    <u>Composition of Committees</u>.  The composition, duties and meeting requirements of each committee shall be set forth in the Rules and Regulations.


<u>ARTICLE XIII</u>

<u>DEPARTMENTS AND SECTIONS</u>

13.01    <u>Clinical Sections</u>.  The Medical Staff shall be organized into clinical sections as may, from time to time, be recommended by the Medical Executive Committee and approved by the Board of Trustees as listed in 13.03 of these Medical Staff Bylaws.

13.02    <u>Specialized Practitioners</u>.

-9395

13.02.01    Podiatry.  The Section of Orthopedics shall include Podiatry.

13.02.02    Dental and Oral Surgery.  The Section of Ear, Nose, and Throat shall include Dental and Oral Surgery.

13.03    Clinical Departments.

13.03.01    Medical Department.  The Sections of Internal Medicine, Physical Medicine, Neurology, and Psychiatry shall be the Medical Department.

13.03.02    Surgical Department.  The Sections of General Surgery, Orthopedics, Gynecology and Obstetrics, Ophthalmology, Urology, Ear, Nose and Throat, Anesthesiology and Neurosurgery shall be the Surgical Department.

13.03.03    Family Medicine Department.  The Sections of Family Practice, Emergency, Radiology, Pediatrics and Pathology shall be the Family Medicine Department.

13.04    Functions of Sections and Departments.

13.04.01    Quality Monitoring.  Each section and department, as appropriate, shall monitor and evaluate the quality and appropriateness of the care and treatment of patients served, and the clinical performance of all individuals, in the section or department.  This includes mortality, morbidity reviews and review of monitors and the findings from surgical case review, blood usage review, drug usage review, medical record review, and utilization review.  The section or department shall identify problems and take remedial action.

13.04.02    Criteria for Privileges.  Each section and department, as appropriate, shall participate in establishing criteria for the granting of clinical Privileges in the section or department, and each section and department shall participate in investigating the qualifications of applicants for clinical Privileges in the section or department.

13.04.03    Organization, Education, and Rules and Regulations.  Each section and department shall address issues regarding Medical Staff organization, education needs, rules and regulations, in a manner consistent with the Bylaws, Rules and Regulations of both the Medical Staff and Hospital.

13.04.04    Section and Department Reports.  Each section and department shall report its activities to the Quality Management and Utilization Review Committee and to the Medical Executive Committee.

13.05    Department Chairmen.

13.05.01    Qualifications.  The department chairman shall be a member of the Active Staff.  In the event no Practitioner in the department is qualified to be chairman, the Medical Executive Committee shall designate a Practitioner from the affected department or from any other department and regardless of qualification, to serve as department chairman with such limitation as the Medical Executive Committee deems appropriate.

13.05.02    Selection.  The Active Staff Members of each department shall annually recommend departmental chairmen, for approval by the Board of Trustees.  In the event of a vacancy in the post of chairman of any department for any reason other than expiration of term of office, the Active

-9396-

Staff Members in the department shall recommend, for approval by the Board of Trustees, a person to fill such vacancy for the remainder of the unexpired term.

13.05.03    Vice-Chairman.  Each department chairman shall appoint a vice-chairman who shall serve at the pleasure of the chairman.

13.05.04    Duties of Chairman.  The department chairman shall:

a.    Recommend Privileges for all individuals providing services in the department;

b.    Cause the department to monitor and evaluate the quality and appropriateness of care;

c.    Be accountable for all professional and administrative activities within the department;

d.    Conduct continuing surveillance of the professional performance of all individuals who have clinical Privileges in the department; and

e.    Recommend to the Medical Staff criteria for clinical Privileges in the department.

13.06    Section Chiefs.

13.06.01    Qualifications.  The section chief shall be a member of the Active Staff.  In the event no Practitioner in the section is qualified to be chief, the Medical Executive Committee shall designate a Practitioner from the affected section or from another section in the department and regardless of qualification to serve as section chief, with such limitations as the Medical Executive Committee deems advisable.

13.06.02    Selection.  The Active Staff Members of each section shall annually recommend section chiefs for approval by the Board of Trustees.  In the event of a vacancy in the post of chief of any section for any reason other than expiration of term of office, the Active Staff Members in that section shall recommend, for approval by the Board of Trustees, a person to fill such vacancy for the remainder of the unexpired term.

13.06.03    Role of Section Chief.  Each section chief may appoint an assistant who shall serve at the pleasure of the section chief.  Each section chief shall promulgate rules and regulations pertaining to the section, subject to the review, recommendations and approval of the respective clinical department and the Medical Executive Committee, and subject to approval of the Board of Trustees.  Such rules and regulations shall be consistent with the Bylaws, Rules and Regulations of the Medical Staff and of the Hospital and with the applicable department rules and regulations.

13.07    Removal of Department Chairmen and Section Chiefs.  Removal of the chairman of a department or a chief of a section during his or her term of office may be brought about by a three-fourths majority vote of all Active Staff Members of the department or of the section and, ratified by the Medical Executive Committee.  This action will be presented to the Board of Trustees.  If the Board of Trustees has concerns regarding the removal of the chairman or section chief, such concerns shall be submitted to the Joint Conference Committee for review and recommendation.

13.08    Director of ICU/CCU.  A director of the ICU/CCU unit shall be appointed by, and shall serve at the pleasure of the Medical Executive Committee.  The director shall function as an advisor on

-9397-

medical issues to the administrative representative responsible for the operation of the ICU/CCU unit. The duties, responsibilities and term of the director shall be specified in the Rules and Regulations of the Medical Staff.

13.09    Modification of Clinical Organization.

13.09.01    Modification Permitted.  Departments, sections, and other clinical organizational units may be created, eliminated, combined, or otherwise modified in accordance with this section 13.09.

13.09.02    Origination of Modification.  Origination of a request for modification may be by any department, section, or other organizational unit, by the Medical Executive Committee, or by the Board of Trustees.  Except if originated by the Medical Executive Committee, any request shall be submitted to the Medical Executive Committee, with a statement of the reasons for the request.

13.09.03    Consideration by the Medical Executive Committee.  Upon receipt of a request for a modification, or upon its own initiation of a modification, the Medical Executive Committee shall investigate the proposed modification and make a recommendation regarding the modification to the Board of Trustees after presentation to and review by the Medical Staff.  The investigation by the Medical Executive Committee shall include consultation with the chair and/or other representatives of the affected department(s), section(s), or other organizational unit(s).

The recommendation of the Medical Executive Committee shall be made after consideration of the following:

a.    With respect to creation or subdivision of an organizational unit, whether a sufficient number of Practitioners is available for appointment to, and will be appointed to, and/or actively participate in, the new organizational unit to enable accomplishment of the functions generally assigned to such unit in these Bylaws and the Rules and Regulations, and the patient or service activity to be associated with the new unit is substantial enough to warrant imposition of the responsibility for those functions.

b.    With respect to elimination of an organizational unit, whether the number of Practitioners in the unit is no longer adequate and will not be so in the foreseeable future to accomplish assigned functions, or the patient or service activity associated with the unit to be eliminated is no longer substantial enough to warrant imposition of the responsibility for those functions.

c.    With respect to combination of two or more units, whether the combination will result in more effective and efficient accomplishment of assigned functions, and the patient or service activity to be associated with the combination is substantial enough, without being unwieldy, to warrant imposition of the responsibility for those functions.

d.    With respect to all modifications, whether the modification would be affected by any Hospital plan of development or by an external licensing or certifying authority.

13.09.04    Vote by Medical Staff.  The Medical Executive Committee shall present its recommendation to the Medical Staff.  The Medical Staff shall be permitted to vote its approval of the change by a majority of the votes cast.

−9398−

13.09.05    Ruling by the Board of Trustees.  The recommendation of the Medical Executive Committee regarding modification of a clinical organizational unit together with the vote of the Medical Staff, shall be forwarded to the Board of Trustees by the Chief Executive Officer.  The Board of Trustees shall, after consideration of the recommendation of the Medical Executive Committee and the vote of the Medical Staff, and after conducting such independent investigation as it deems proper, determine whether the modification shall be adopted.


## ARTICLE XIV

## ALLIED HEALTH PROFESSIONALS

14.01    Qualifications.  Allied Health Professionals are those individuals who possess licensure or certification as health professionals to give specified, limited health care services to patients.  Allied Health Professionals may include without limitation nurse clinicians, physician assistants, clinical scientists, and psychologists.  The determination of categories of health professionals who are suitable as Allied Health Professionals shall be made by the Board of Trustees in accordance with patient care needs and the capability of the Hospital's facilities and services for support and after consultation with the Medical Executive Committee.

14.02    Status.  Allied Health Professionals are not eligible for Medical Staff membership and may not vote or hold office on the Medical Staff.  They may be invited to serve on a Medical Staff committee in an ex-officio status without vote.  The granting of Allied Health Professional staff status or of Privileges shall not in and of itself carry the ability to use any particular Hospital facilities or equipment.  No member of the Allied Health Professional staff shall have admitting Privileges.

14.03    Application for Appointment and Privileges.  Applicants for membership and renewal of membership on the Allied Health Professional staff and for the grant, renewal or modification of Privileges shall make application for the membership and Privileges desired pursuant to the procedures set forth in these Bylaws for Members of, and applicants to, the Medical Staff, subject to the following modifications:

a.    Such provisions and procedures shall be generally modified as necessary or appropriate for application to the Allied Health Professional staff.

b.    All references to the Medical Staff or to Medical Staff membership shall be deemed references to the Allied Health Professional staff and to Allied Health Professional staff membership, to the extent applicable.

c.    An Adverse recommendation made during the appointment and credentialing process shall not give rise to the appellate review which is afforded to applicants to, and Members of, the Medical Staff.  An Adverse recommendation shall entitle the affected applicant or Member of the Allied Health Professional staff only to the procedures set forth in this Article XIV.

14.04    Terms of Appointment.  All initial appointments to the Allied Health Professional staff shall be provisional for a period of not less than twelve (12) months.  Advancement from provisional to full Allied Health Professional staff status shall be in accordance with the procedures specified in Article VI and Article VII except that the procedures specified therein shall be modified as necessary or appropriate for suitable application to the Allied Health Professional staff.  Appointments following the termination of provisional status and all other reappointments shall be for periods of not more than twenty-four (24) months.  Decisions to reappoint for a period of less than twenty-four (24) months shall not be considered

37

Adverse, and no rights of appeal shall be applicable thereto. At the time of initial appointment and each reappointment, each Allied Health Professional staff member shall be notified in writing of the term of his appointment, his Privileges, and the department to which he has been assigned.

14.05   Clinical Privileges. Appointments to the Allied Health Professional staff shall confer on the appointee only those Privileges granted by the Board of Trustees in accordance with these Bylaws.

14.06   Renewal of Appointment and of Privileges. The appointment to the Allied Health Professional staff and the grant of Privileges to an Allied Health Professional shall be subject to renewal no less frequently than every two years. Review of the appointment and the Privileges of an Allied Health Professional shall include appraisal, to the extent applicable, from the clinical or administrative department or section in which the Allied Health Professional practices; record completion history; reports from committees which review quality and utilization; reports from other institutions and entities regarding clinical practice and staff status; information regarding continuing education activities; current health status; malpractice insurance coverage and history.

14.07   Grant of Appointment and Privileges. Every applicant for Allied Health Professional staff membership shall be a graduate of an approved or recognized school or training program for the profession or occupation in question, and shall hold a current license, certificate, or other legal credential entitling practice of the profession or occupation in the State of Michigan. All applicants shall document background, experience and training and demonstrate current competence, good character judgment, appropriate health status, adherence to the ethics of the profession or occupation and an ability to work with others, in order that patients may be treated in accordance with applicable standards of practice. In addition, the Board of Trustees shall determine that there are adequate facilities and support services within the Hospital to meet the needs of the applicant and patients, that there is a need for additional Allied Health Professional staff members with the applicant's skill and training to meet the patient care needs of the Hospital, and that the geographic location of the applicant is such that he can effectively meet the needs of Hospital patients and fulfill his responsibilities as an Allied Health Professional staff member.

14.08   Responsibilities and Prerogatives of Allied Health Professional Staff Members.

14.08.01   Individual Responsibilities. Each Member of the Allied Health Professional Staff agrees to:

a.      Abide by these Bylaws and all Medical Staff Rules and Regulations and Hospital policies and the Bylaws of the Hospital;

b.      Provide patients with care in accordance with the generally recognized standard of care of the applicant's profession or occupation;

c.      Prepare and complete in a timely manner the medical and other required records for all patients to whom care is provided by the Allied Health Professional in the Hospital;

d.      Abide by the applicable legal and ethical principles imposed upon Members of the Medical Staff under these Bylaws and the legal and ethical principles of the profession or occupation of the applicant, including, but not limited to: refraining from fee splitting or other inducements related to patient referral, providing for continuous care of patients, refraining from delegating the responsibility for diagnosis or care of patients to a person who is not qualified to undertake this responsibility, and seeking consultation whenever necessary;

e.      Promptly notify the Chief Executive Officer in writing of all of the following: the

38

relinquishment, limitation, revocation or suspension of the applicable license in any state; the loss or limitation of staff membership or clinical privileges at any hospital or other health care institution; the relinquishment, limitation, revocation, suspension or loss of membership, certification, eligibility or other legal credential; the commencement of a formal investigation, or the filing of charges, by the Department of Health and Human Services, or any law enforcement agency or health regulatory agency of the United States or of the State of Michigan; or the filing of a suit against the Allied Health Professional staff member alleging professional negligence or breach of a duty of care;

f. Exhaust all administrative remedies provided by these Bylaws before initiating any legal proceeding in any state or federal court;

g. Serve on Medical Staff or department committees when requested;

h. Attend Medical Staff or department committees meetings when a case(s) with which the Allied Health Professional is concerned will be discussed; and

i. Participate as appropriate, in the patient care audit and other quality reviews, evaluation and monitoring activities of the Medical Staff.

14.08.02 _Prerogatives._  The prerogatives of Allied Health Professional staff members shall be to:

a. Provide specific patient services under the supervision or direction of, or consultation with, a member of the Medical Staff;

b. Participate directly in the medical management of patients under the supervision of a member of the Medical Staff who has Privileges to provide such care himself and who retains ultimate responsibility for the patient's care;

c. Exercise independent judgment within areas of independent professional competence and within any licensure requirements or other legal limitations;

d. Write orders, to the extent specifically permitted by the Privileges granted to each Allied Health Professional staff member and by the Medical Staff Rules and Regulations, but not beyond the scope of the applicable license, certificate, or other legal credentials; and

e. Exercise such other prerogatives as shall be provided in the Medical Staff Rules and Regulations.

14.09 _Corrective Action._

14.09.01 _Initiation of Corrective Action._  When reliable information indicates a member of the Allied Health Professional staff may have exhibited acts, demeanor, or conduct reasonably likely to be detrimental to patient safety or to the delivery of patient care contrary to the Medical Staff Bylaws and Rules and Regulations; or below applicable professional standards, corrective action may be requested by any officer of the Medical Staff, by the chairman of any department, by the chairman of any standing committee of the Medical Staff, by the Chief Executive Officer, or by the Board of Trustees.  Such a request shall be in writing, shall be made to the Medical Executive Committee, and shall be supported by reference to the specific activity or conduct which constitutes the grounds for the request.  Upon receipt of

39

a request for corrective action, the Medical Executive Committee shall notify the affected Allied Health Professional staff member of the request and of the activity or conduct upon which the request is based.

14.09.02   Notice to the Board of Trustees.  The chairman of the Medical Executive Committee shall promptly notify the Board of Trustees, through the Chief Executive Officer, in writing of all requests for corrective action with respect to members of the Allied Health Professional staff received by the Medical Executive Committee and shall continue to keep the Chief Executive Officer fully informed of all action taken in connection therewith.  Such notice shall include an invitation to the Chief Executive Officer to participate in any investigation conducted by the Medical Executive Committee with respect to the request for corrective action.

14.09.03   Medical Executive Committee Investigation.  The Medical Executive Committee may make such further inquiries and investigation as it deems appropriate in order to make its recommendation.  Such investigation may be conducted on behalf of the Medical Executive Committee by an ad hoc committee of the Medical Executive Committee or by individual members of the Medical Executive Committee and may include a meeting with the affected Allied Health Professional.

14.09.04   Medical Executive Committee Recommendation.  The Medical Executive Committee shall transmit to the Board of Trustees, through the Chief Executive Officer, a written report of the Medical Executive Committee's recommendation with respect to the request for corrective action.  The Medical Executive Committee may recommend any of the following:  no corrective action; issuance of a warning; issuance of a letter of admonition or reprimand; a term of probation; a consultation requirement; suspension or revocation of membership; or suspension, restriction or reduction of Privileges.

14.09.05   Subsequent Action.  In all cases, the Medical Executive Committee shall cause the Chief Executive Officer to notify the Allied Health Professional staff member affected in writing of its recommendation within ten (10) business days from the date of committee recommendation.  If the Executive Committee recommendation involves suspension or revocation of Allied Health Professional staff membership; suspension, restriction, or reduction of Privileges; or a consultation requirement, the affected Allied Health Professional shall be afforded the procedure set forth in Section 14.11 of these Bylaws.

14.09.06   Board of Trustees Action.  After reviewing the recommendation of the Executive Committee, the Board of Trustees shall make a determination regarding the Allied Health Professional.  The determination of the Board of Trustees shall not be subject to review.  The affected Allied Health Professional shall be provided with notice of the decision of the Board of Trustees.

14.10   Suspension and Other Restrictive Action.

14.10.01   Summary Suspension.  All or a portion of the Privileges of a member of the Allied Health Professional staff may be summarily suspended at any time if there is reasonably reliable evidence of imminent danger to the health of any patient relating directly to the conduct or lack of competence of the Allied Health Professional.  A summary suspension may only be imposed by any two of the following acting jointly:  Chief of Staff, department chairman, and the Chief Executive Officer.  A summary suspension shall be effective immediately.  The affected Allied Health Professional shall be notified in writing of the summary suspension as soon as practicable.  Subsequent disposition of the summary suspension shall be consistent with the provisions of these Bylaws regarding the imposition of summary suspension on Members of the Medical Staff; provided, however, following an Adverse recommendation of the Medical Executive Committee, the affected Allied Health Professional shall be entitled only to those rights set forth in this Article XIV.

40

–9402–

14.10.02    Other Restrictive Action.  The Allied Health Professional staff membership and Privileges of an Allied Health Professional shall also be subject to automatic suspension, temporary suspension, temporary monitoring, summary termination by the Board of Trustees, and review and reporting of these actions under the same terms and conditions as are applicable to Members of the Medical Staff, as the terms and conditions for such actions may be appropriately modified for application to Allied Health Professionals.

14.11    Meeting with Medical Executive Committee.

14.11.01    Applicable Circumstances.  In all instances of an Adverse recommendation regarding membership on the Allied Health Professional staff or the Privileges of an Allied Health Professional or in circumstances in which a member of the Medical Staff would be entitled to the Appellate Review set forth in Article IX of these Bylaws, or under circumstances stated in this Article XIV, an Allied Health Professional or applicant for membership on the Allied Health Professional staff shall be afforded an informal meeting with the Medical Executive Committee or a designated committee or other representative thereof.  Such meeting shall take place before an Adverse recommendation is transmitted to the Board of Trustees.

14.11.02    Notice, Request, and Waiver.  The affected applicant or Allied Health Professional shall be given written notice of a preliminary Adverse recommendation or other initial action and of his right to a meeting with the Medical Executive Committee or its representative.  The applicant or Allied Health Professional shall be given fifteen days from receipt of the notice to request a meeting.  The request for a meeting must be in writing and must be received within the fifteen-day period.  Failure by the applicant or Allied Health Professional to request a meeting within the time allowed is deemed a waiver of the right to such meeting, and the Medical Executive Committee Adverse recommendation shall then be submitted to the Board of Trustees for final decision.  If the applicant or Allied Health Professional requests a meeting, the meeting shall be scheduled with at least fifteen (15) days' notice to the affected applicant or Allied Health Professional; provided, however, notice of the meeting may be less than fifteen (15) days, if a request for same is submitted by the affected applicant or Allied Health Professional.

14.11.03    Conduct of Meeting.  The meeting shall be conducted on an informal basis.  Neither party shall be represented by counsel; however, the affected applicant or Allied Health Professional may be accompanied by another person.  No record of the meeting shall be required.

14.11.04    Subsequent Action by the Medical Executive Committee.  Following a meeting, if requested, with the affected applicant or Allied Health Professional, the Medical Executive Committee shall transmit its recommendation to the Board of Trustees through the Chief Executive Officer.


ARTICLE XV

MEDICAL STAFF MEETINGS

15.01    Annual Meeting.  The annual meeting of the Medical  Staff shall be held at the regular Medical Staff meeting in November of each year.  At this time,  the retiring officers and committees shall make such reports as may be desirable.

15.02    Regular Meetings.  Regular meetings of the Medical Staff shall be held on the fourth Monday of February, May, September, and November at 7:30 p.m. in the Hospital, unless otherwise changed by the Medical Executive Committee with ten (10) days' notice to the Medical Staff.

41

15.03    Special Meetings.  Special meetings of the Medical Staff may be called at any reasonable time by the Chief of Staff, or the Chairman or Vice Chairman of the Board of Trustees, or shall be called at a reasonable time by the Chief of Staff on the request of twenty percent (20%) of the Members of the Active Staff, after a forty-eight (48) hour notice to all Medical Staff Members.

15.04    Attendance Requirements.  Attendance at the Medical Staff meetings is required of Active and Provisional Active Staff Members.  (See section 8.03.01 regarding automatic suspension for absences from Medical Staff meetings.)  Members of the Consulting, Courtesy, Emeritus, Honorary, and Correspondence Staff will be required to attend those Medical Staff meetings for which their presence is specifically requested by the Chief of Staff or Board of Trustees.  Members of the Active and Provisional Active Staff are required to attend fifty percent (50%) of all meetings, including Medical Staff, committee, department and clinical sections that he/she is assigned to.

15.05    Quorum.  Fifty percent (50%) of the total membership of the Active Medical Staff shall constitute a quorum for any Medical Staff meeting.

15.06    Notice.  Notice of special meetings and of changes in the date, time or place of regular meetings shall be given in writing and delivered by United States mail or by placing the notice in the Hospital mailboxes of Medical Staff Members.  Attendance at the meeting shall constitute a waiver of notice of the meeting.

15.07    Agenda.  The agenda of the regular Medical Staff meeting shall be as follows:

    a.    Call to order.

    b.    Reading of minutes of the last regular meeting and of the special meetings.

    c.    Unfinished business.

    d.    Communications.

    e.    Report of the Medical Executive Committee.

    f.    Report of standing and special medical committees.

    g.    New business.

    h.    Recommendations for the good of the Medical Staff and Hospital.

    I.    Administrative Report.

    j.    Adjournment.

15.08    Procedure.  Roberts Rules of Order shall be followed in the conduct of Medical Staff meetings to the extent not inconsistent with these Bylaws.  Absentee ballots for elections are not allowed.

ARTICLE XVI

COMMITTEE, SECTION, AND DEPARTMENT MEETINGS

16.01    Regular Meetings.

16.01.01    Committee Meetings.  Except as otherwise stated in these Byalws, committees may determine when they meet.

16.01.02    Quality Management Meetings.  Departments shall hold Quality Management meetings with sufficient frequency to meet JCAHO requirements.

16.02    Special Meetings.  A special meetings of any committee, department, or clinical section may be called by, or at the request of, the chairman or chief thereof, by the Chief of Staff or by one-third (1/3) of the members of the group then serving, but in any case, not less than two (2) members.

16.03    Notice of Meeting.  Written or oral notice setting a place, day and hour of any special meeting or any regular meeting shall be given to each member of the committee, department, or clinical section not less than seven (7) days before the time of such meeting, by the person or persons calling the meeting.  If by mail, the notice of meeting shall be deemed delivered when deposited in the United States mail addressed to the member at his address as it appears on the record of the Hospital with postage thereon prepaid.  Attendance of a member at a meeting shall constitute a waiver of notice of such meeting.

16.04    Manner of Meeting.  The action of the majority of the members present at a meeting at which a quorum is present shall be the action of the committee, department, or clinical section.

16.05    Minutes.  Each committee, section, and department shall maintain minutes of each meeting.

16.06    Attendance Requirements.

16.06.01    Annual Requirements.  Each member of the Active and Provisional Active Medical Staff shall be required to attend a total of fifty percent (50%) of all meetings, including committees, department and clinical sections that he/she is assigned to.  Attention is called to section 8.03.01 of these Bylaws regarding automatic suspension for absences from committee, section or department meetings.

16.06.02    Attendance to Discuss Patient.  A Practitioner whose patient's clinical course is scheduled for discussion at a departmental, section or committee meeting shall be so notified and shall be expected to attend such meeting.  If such Practitioner is not otherwise required to attend the meeting, the Chief of Staff, through the Chief Executive Officer, shall give the Practitioner advance written notice of the time and place of the meeting at which the Practitioner's attendance is expected.  Whenever apparent or suspected deviation from standard clinical practice is involved, the notice to the Practitioner shall so state, shall be given by certified mail, return receipt requested, and shall include a statement that attendance at the meeting at which the alleged deviation is to be discussed is mandatory.

<u>ARTICLE XVII</u>

<u>RULES AND REGULATIONS OF THE MEDICAL STAFF</u>

The Medical Staff shall propose such Rules and Regulations as it may deem necessary for the proper conduct of its work and shall periodically review and recommend appropriate revisions to its Rules and Regulations.  Recommended changes to the Rules and Regulations shall be submitted to the Medical

-9405-

Executive Committee for review and evaluation prior to presentation for consideration by the Medical Staff. Upon approval by two-thirds (2/3) of those Active Staff Members present at a Medical Staff meeting at which there is a quorum, proposed Rules and Regulations and revision shall become effective following approval by the Board of Trustees. No later than sixty (60) days after the Board of Trustees receive a request from the Medical Staff for approval of new or revised Rules and Regulations, the Board of Trustees shall provide the Medical Executive Committee with an acknowledgment of receipt and a statement regarding the status of same. The Board of Trustees will act upon Rules and Regulations proposed by the Medical Staff within six (6) months after the Board of Trustees' receipt of the proposal. Applicants to, and Members of, the Medical Staff shall be governed by such Rules and Regulations as are properly initiated and adopted. If there is a conflict between the Bylaws and the Rules and Regulations, the Bylaws shall prevail.


## ARTICLE XVIII

## PROFESSIONAL PRACTICE REVIEW FUNCTION

18.01    Functions of Medical Staff Organization and Administration.

18.01.01    Professional Practice Review Functions. The Medical Staff is organized in a manner to provide ongoing review of the professional practices of the Hospital, for the purposes of striving to reduce morbidity and mortality and to improve the care of patients. Such review includes, but is not limited to, the quality and necessity of care provided and the preventability of complications and deaths. To the extent that any committee of the Medical Staff performs such functions, such committee is hereby designated as a committee assigned professional practice review functions.

18.01.02    Department and Section Professional Review Functions. Professional practice review functions are also performed in the various departments and sections of the Medical Staff, by the department and section officers and committees, by hearing officers appointed pursuant to Article IX and from time to time, by each department and section as a committee of the whole reviewing its clinical work and by Medical Staff Members servicing as preceptors.

18.01.03    Officers and Administration Professional Review Functions. The officers of the Medical Staff and of the Hospital administration are assigned and perform professional practice review functions and coordinate the work of all other individuals and committees assigned such function.

18.01.04    Employee Professional Review Functions. Employees of the Hospital are assigned and perform professional practice review functions by providing information, records, data and knowledge to and by assisting other individuals and committees in the performance of their professional practice review functions.

18.02    Board of Trustees' Authority and Function. All professional practice review functions are carried out under the direction and authority of the Board of Trustees, which is assigned and carries out professional practice review functions in receiving and acting on the reports and recommendations of all other committees and individuals assigned such functions.

18.03    Confidentiality of Information. All records, data, and knowledge collected by or for individuals and committees assigned professional practice review functions shall be confidential, shall be used only for carrying out such functions, and shall not be made available to any person or entity not assigned such functions. Such records, data and knowledge shall be entitled, without limitation, to the

-9406-

protection of Sections 20175 and 21515 of Act 368 of the Public Act of 1978, as amended, being MCL 333.20175 and MCL 333.21515, and Section 1 to 3 of Act No. 270 of the Public Acts of 1967, being MCL 331.531 to 331.553. Any unauthorized dissemination of such records, data and knowledge by any Member of the Medical Staff, including but not limited to those assigned a professional practice review function, shall be grounds for corrective action under these Bylaws.

18.04   Immunity from Liability.  Each representative of the Medical Staff and Hospital shall be exempt, to the fullest extent permitted by law, from liability to an applicant, Allied Health Professional, or Staff Member for damages or other relief for any action taken or statements or recommendations made within the scope of his or her duties as a representative of the Medical Staff or Hospital.  Each representative of the Medical Staff and Hospital and all third parties shall be exempt, to the fullest extent permitted by law, from liability to an applicant, Allied Health Professional, or Staff Member for damages or other relief by reason of providing information concerning such person who is, or has been, an applicant to, or Member of, the Medical Staff who did, or does, exercise clinical Privileges or provide services at the Hospital.  In addition, individuals who participate in the review of professional practices at the Hospital shall be eligible for indemnification by the Hospital in accordance with the provisions of the Hospital's self-insurance trust.


ARTICLE XIX

GENERAL PROVISIONS

19.01   Dues and Assessments.  The Medical Executive Committee shall have the power to recommend the amount of annual dues or assessments, if any, for each category of Medical Staff membership, subject to the approval of the Medical Staff, and to determine the manner of expenditure of such funds received.  Such dues or assessments should be fully paid prior to any action on application from Medical Staff Members for reappointment.  Practitioners who have been on staff for twenty-five (25) years or who have reached the age of sixty-five (65) are not required to pay staff dues.

19.02   Construction of Terms and Headings.  The captions or headings in these Bylaws are for convenience only and are not intended to limit or define the scope of or affect any of the substantive provisions of these Bylaws.  These Bylaws apply with equal force to both sexes wherever either term is used.  The use of the male gender throughout these Bylaws is for convenience only and does not imply any discrimination by sex.

19.03   Authority to Act.  Any member or Members who act in the name of the Medical Staff without proper authority shall be subject to such disciplinary action as the Medical Executive Committee or Board of Trustees may deem appropriate.

19.04   Division of Fees.  Any division of professional fees by members of the Medical Staff is forbidden and any such division of fees shall be cause for exclusion or expulsion form the Medical Staff.


ARTICLE XX

AMENDMENTS

-9407-

20.01   Periodic Review.  The Bylaws and Rules and Regulations Committee or other committees designated by the Medical Executive Committee shall review the Medical Staff Bylaws and the Medical Staff Rules and Regulations no less frequently than every three (3) years and shall report any recommendations for changes to the Medical Executive Committee.

20.02   Initiation by the Medical Staff.  All proposed amendments of these Bylaws initiated by the Medical Staff shall, as a matter of procedure, be referred to the Medical Executive Committee.  The Medical Executive Committee shall report on them either favorably or unfavorably at the next regular meeting of the Medical Staff, or at a special meeting called for such purpose.  They shall be voted upon at that meeting, provided that they shall have been posted on the Medical Staff bulletin board at least fourteen (14) days prior to the meeting.  An amendment approved by two-thirds (2/3) of the Active Staff Members present at the Medical Staff meeting at which there is a quorum shall become effective if approved by the Board of Trustees.  No later than sixty (60) days after the Board of Trustees receives a request from the Medical Staff to approve amendment(s) to these Bylaws, the Board of Trustees shall provide the Medical Executive Committee with an acknowledgment of receipt of the amendment(s) and a statement regarding the status of same.  The Board of Trustees will act upon Bylaw amendments proposed by the Medical Staff within six (6) months after the Board of Trustees' receipt of the proposal.

20.03   Initiation by the Board of Trustees.  In addition, these Bylaws may be amended as provided in the Hospital's Bylaws after discussion with Medical Staff and Joint Conference Committee.

ARTICLE XXI

ADOPTION

21.01   Bylaws.  These Bylaws are adopted and made effective as of <u>   July 18, 1995          </u>, superseding and replacing any and all previous Medical Staff Bylaws, and, henceforth, all activities and action of the Medical Staff and of each and every appointee to the Medical Staff shall be taken under and pursuant to the requirements of these Bylaws.

21.02   Rules and Regulations.  The present Rules and Regulations of the Medical Staff are hereby ratified insofar as they are consistent with these Bylaws, until such time as they are amended in accordance with the terms of these Bylaws.

APPROVED by the Medical Staff on          <u>   May 22, 1995                          </u>.

<u>                                                        </u>
Chief of Staff

ADOPTED by the Board of Trustees on          <u>   July 18, 1995          </u>

<u>                                                        </u>
Chairman, Board of Trustees

Revision 16.06.01 approved 11/19/96 Board of Trustees

-9408-

Revision 8.03.1 (b); 12.01. (1); 12.01.(k); 13.01; 13.01 (a-q); 12.05.2; 15.04

APPROVED by the Medical Staff on <u>February 23, 1998.</u>

_____
Chief of Staff

ADOPTED by the Board of Trustees on <u>March 17, 1998.</u>

_____
Chairman, Board of Trustees

Revisions to 4.07.02, 5.02, 5.03, 5.04, 6.02, 10.03.03, 10.03.04, 10.03.05, 11.05, 16.01.01, 20.02, 20.02, 20.03

APPROVED by the Medical Staff on <u>September 25, 2000.</u>

_____
D.V. Ramana, M.D., Chief of Staff

ADOPTED by the Board of Trustees on <u>February 20, 2001.</u>

_____
Kathryn Lawter, Chairman Board of Trustees

-9409-