**EXHIBIT E**

**Sample Employment Agreement of
Huron Point OB/GYN, P.C.**

# HURON POINTE OB-GYN, P.C.

## EMPLOYMENT AGREEMENT

THIS AGREEMENT is made and entered into on **March 1, 2002,** by and between **HURON POINTE OB-GYN, P.C.,** a professional corporation in Michigan ( Huron Pointe), and ▓▓▓▓▓▓▓▓▓▓ whose address is 1254 N. Main Street, Lapeer, Michigan 48446 ( the "Physician").

### RECITALS:

A. Huron Pointe owns and operates an Obstetrics & Gynecology practice which provides Ob-Gyn services in various locations to the Public.

B. The Physician is licensed to practice medicine in the State of Michigan and is trained and specializes in Obstetrics and Gynecology medicine.

C. The Physician is board eligible and will take oral boards within a three-year period of time in order to become Board Certified.

D. Huron Pointe desires to employ the Physician, on a full-time basis, to conduct an obstetrics and gynecology medical practice in the Lapeer office located at 1254 N. Main Street, Lapeer, Michigan 48446, and a new Oxford offices of Huron Pointe Ob-Gyn, P.C., located at 51 S. Washington, Oxford Michigan 48446, or any subsequent location as may be determined by Huron Pointe (the "Practice"). Any change in location will be made in agreement with the Physician and "the Practice".

E. The Physician desires to be employed by Huron Pointe Ob-Gyn, P.C. on a full-time basis to conduct the Practice, according to the terms and conditions of this Agreement.

THEREFORE, the parties agree as follows:

### 1. EMPLOYMENT AND DUTIES

1.01   Huron Pointe employs the Physician and the Physician accepts employment from Huron Pointe, to conduct the Practice during the term of this Agreement, according to the terms and conditions set forth below. The Physician will be responsible to the President of Huron Pointe Ob-Gyn, P.C. or his designee for all matters pertaining to the Practice.

1.02   During the term of this Agreement, the Physician agrees to provide the following professional medical services:

(a)   Perform all services necessary for the proper conduct of the Practice;

(b)   Provide medical evaluation, direction, consultation and follow-up care for patients of the Practice admitted for inpatient care when appropriate;

(c)   Accept all patients who present themselves to the Practice for treatment or who are referred to the Physician, regardless of such patients' medical insurance, ability to pay, or participation in any managed care or alternative health care delivery programs;

(d)   Devote her full time and best efforts to the conduct of the Practice. The actual office schedules will be determined by Huron Pointe and the Physician;

(e)   Provide on-call coverage as is appropriate and customary for Huron Pointe Ob-Gyn physicians consistent with the past on-call coverage provided of one call day per week and one weekend per month. Call coverage will be agreed upon and arranged by the Physicians of Huron Pointe Ob-Gyn, P.C.

(f)   Maintain active liaison with members of the medical community through medical staff membership and participation in medical staff activities;

(g)   Participate in the physician and non-physician education and teaching programs of McLaren and Lapeer Regional Hospital or other Association programs reasonably requested by Huron Pointe;

(h)   Represent Huron Pointe in meetings and with professional groups regarding obstetrics and gynecology medicine issues; and

(i)   Perform such additional services as Huron Pointe may reasonably request from time to time.

1.03   All services provided by the Physician pursuant to this agreement will conform to:

(a)   All applicable federal, state and local governmental laws, rules and regulations, as well as all licensure requirements;

(b)   All applicable standards of certifying or accrediting agencies from which Huron Pointe has secured certification or accreditation;

(c)   All applicable standards established from time to time third party payors, including, but not limited to, Blue Cross/Blue Shield of Michigan, Medicare, and Medicaid;

(d)   All applicable standards, rules and regulations regarding confidentiality of patient and/or Huron Pointe records; and

(e)   All applicable quality assurance and utilization review programs required by Huron Pointe and all relevant regulating agencies, including, without limitation, the Michigan Peer Review Organization and the Health Care Financing Administration.

1.04   All services provided will be performed by the Physician in a competent, responsible, courteous and professional manner.

1.05   The Physician will be required to abide by all published applicable rules, regulations and policies of Huron Pointe Ob-Gyn, P.C. as the same are in effect from time to time. The physician may also be required to undergo a physical prior to employment, and the cost of such physical will be paid by Huron Pointe. Except as specifically indicated otherwise in this Agreement, the Physician shall be bound by all of the personnel policies and procedures of Huron Pointe, as the same are in effect from time to time.

1.06   The Physician will prepare such records, charts, reports, and forms, documenting the services provided by the Physician pursuant to this Agreement, as may be reasonably required by Huron Pointe. All such records will be and remain the property of Huron Pointe and will be maintained and kept at the Practice on a confidential basis and will not be disclosed by the Physician to any other person other than Huron Pointe employees and members of the Medical Staff, except as required by law. Any change or modification of patient records will be mutually agreed upon by Huron Pointe and the Physician.

## 2.    COMPENSATION

2.01    As the total compensation to be received by the Physician for all services provided under this Agreement, Huron Pointe will pay or provide (subject to appropriate tax and payroll withholdings) the compensation and benefits described below.

2.02    Huron Pointe will pay the Physician a minimum annual base salary of One Hundred Eighty Thousand Dollars ($180,000) for the first and second years of the term of the Agreement, payable in equal bi-weekly installments. In the third year of the term of the Agreement, the minimum base salary will be 90% of the first years minimum annual base salary, which calculates to be One Hundred Sixty Two Thousand Dollars ($162,000), payable in equal bi-weekly installments; provided, however, if at the end of the second year of this agreement, the cash collections from professional fees personally generated by the Physician from the Practice is Three Hundred Sixty Thousand Dollars ($360,000) or more, the minimum annual base salary during the third year of the term of the Agreement will be One Hundred Eighty Thousand Dollars ($180,000).

2.03    If the Physician has not been employed under this agreement for the full fiscal year, or if the physician fails to work on a full-time basis, the compensation will be calculated on a proportion of the time worked based on the minimum annual base salary as is outlined in 2.02. If less than full-time work is performed by the Physician in medical practice, according to the terms and conditions of this Agreement, the Physician will be compensated at fifty percent (50%) of the cash collections from professional fees, minus the physician expenses, personally generated by the Physician from the Practice during the term of this Agreement not to exceed the minimum annual base salary of One Hundred Eighty Thousand Dollars ($180,000). Huron Pointe will provide the Physician with reasonable access to the Practice's books, records, and supporting data used to calculate compensation outlined in 2.03. Monthly reports will be provided by Practice to the Physician each month outlining all information with regards to charges, collections and write-offs as well as data on procedures and pertinent information for managing the physician's performance.

2.04    Huron Pointe will provide the following benefits during the term of this Agreement:

(a)    An annual allowance of $1,500. for continuing medical education expenses, which will include but not be limited to, the costs of attending courses, seminars and conferences, and the cost of national, state and local medical society dues, specialty board fees or dues, and licensure fees. The Physician may annually attend continuing medical education courses, seminars and conferences, but will obtain consent of the President of Huron Pointe or his designee before attending such courses, seminars or conferences;

(b)    Reimbursement of publications, reference and/or articles for the offices and/or for preparation for boards;

(c)   The other usual benefits afforded Huron Pointe physician-employees generally, as may be in effect from time to time. These benefits are set forth on Exhibit A. Nothing contained in this Agreement will be interpreted to require Huron Pointe to maintain the current level of physician-employee benefits throughout the term of this Agreement; however, Huron Pointe will not reduce the level of the Physician's benefits except as a part of an overall modification or reduction of benefits provided to all of its physician-employees.

## 3.   BILLING AND COLLECTION

3.01   All services provided by the Physician pursuant to this Agreement will be billed by Huron Pointe in a manner consistent with Huron Pointe practices and the billing system utilized by Huron Pointe. Huron Pointe or its authorized agent will have the sole and exclusive right to invoice and collect all charges for services rendered by the Physician under this Agreement. Unless otherwise directed by Huron Pointe, the Physician will not directly bill patients or third party payors for any services provided under this Agreement.

3.02   The Physician hereby assigns to Huron Pointe her third party billing (P.I.N.) numbers to enable Huron Pointe or its authorized agent to bill and collect all appropriate charges as a result of the Physician's services provided under this Agreement. The Physician also assigns to Huron Pointe her right to receive payment from third party payors for such services.

3.03   All compensation paid to the Physician by private and third party payors, or other sources for the services rendered by the Physician pursuant to this Agreement shall be paid or endorsed over and belong to Huron Pointe Ob-Gyn, P.C.

## 4.   SPACE, EQUIPMENT AND STAFF

4.01   Huron Pointe will, consistent with general Huron Pointe policies and subject to available resources, provide such office space, utilities, equipment, staff and supplies as are necessary and appropriate for the proper operation and function of the Practice.

4.02   The Physician will not increase or decrease the size of the staff of the Practice or change the level of compensation of the staff of the Practice, without prior written consent of Huron Pointe.

## 5. TERM AND TERMINATION

5.01   The term of this Agreement, unless sooner terminated as provided below in the subsection 5.02, shall be for one (1) year commencing on March 1, 2002, and ending
February 28, 2003.

5.02   This Agreement may be terminated and canceled, at any time, as follows:

(a)   By mutual written consent of the parties;

(b)   By either party, effective 30 days after written notice to the other of failure to comply with, or cure any breach or default of, any material term or condition of this Agreement. In the event of such failure, breach or default is remedied within such 30 day period, or if failure, breach or default is remedied within such 30 day period, or if the failure, breach or default is such a character as to require more than 30 days to cure and the party who received the notice is proceeding diligently to cure such failure, breach or default, such notice of termination will be null and void, and this Agreement will continue in full force and effect. However, if the failure, breach or default is not capable of cure, termination may be effected 30 days from written notice;

(c)   By Huron Pointe immediately upon the death or determination of disability of the Physician (which shall mean the Physician's inability to fully perform the services required under this Agreement for more one month);

(d)   By Huron Pointe upon 30 days' prior written notice to the Physician in the event it determines in good faith that the quality of medicine practiced by the Physician unreasonably exposes Huron Pointe to malpractice liability;

(e)   By Huron Pointe immediately upon the Physician being formally charged with any crime punishable as a felony, or any crime related to medical practice, or any crime punishable as a misdemeanor involving moral turpitude or immoral conduct;

(f)   By Huron Pointe immediately upon the reduction, termination or suspension of the medical staff membership or clinical privileges of the Physician at Lapeer Regional Hospital;

(g)   By Huron Pointe immediately upon the Physician's exclusion from the Medicare or Medicaid programs or the occurrence of any event or condition which prohibits Huron Pointe from billing for the Physician's services or accepting assignment of the Physician's right to receive payment from third party payors pursuant to subsection 3.02 above; or

(h) By Huron Pointe immediately upon the Physician's loss of a good and valid license to practice medicine in the State of Michigan, her controlled substance license from the State of Michigan, or her controlled substance registration certificate from the Drug Enforcement Administration.

5.03 The compensation payable to the Physician for the services provided b the Physician under this Agreement will accrue pro rata over the term of this agreement. All non-accrued compensation will cease on the day of the termination of this Agreement.

5.04 In the event the Physician continues, with the consent of Huron Pointe, to render services after the termination date of this Agreement, the Physician shall do so on a month to month basis with either party having the right to terminate this Agreement at the end of any month on at lease 30 days' written notice, and all of the other terms and conditions of this Agreement shall remain in full force and effect.

## 6. PROFESSIONAL LIABILITY INSURANCE

During the term of this Agreement, Huron Pointe will provide, pay for and maintain professional liability insurance coverage for the Physician for professional services rendered by the Physician pursuant to this Agreement, with limits of Two Hundred Thousand Dollars ($200,000) for each person injured and Six Hundred Thousand Dollars ($600,000) annual aggregate on an occurrence basis.

The Physician agrees to participate and attend any and all risk management courses which will achieve the maximum discount for the premium for malpractice insurance as is deemed necessary by Huron Pointe.

## 7. OUTSIDE PRACTICE OR ACTIVITIES

7.01 The Physician acknowledges and agrees: (a) her employment by Huron Pointe exposes the Physician to patients of Huron Pointe, patients of other physicians employed by Huron Pointe, Huron Pointe's managed care provider agreements and enrollees under such provider agreements, and Huron Pointe's case management protocols and quality improvement and risk management processes, all of which are proprietary and valuable to Huron Pointe; (b) Huron Pointe has made and will continue to make a substantial investment in developing the trust and confidence of its patients and their allegiance to Huron Pointe and the physicians associated with Huron Pointe; (c) her full time and best efforts are vital to the success of the Practice and Huron Pointe's Corporate success; and (d) if the Physician were to leave the employment of Huron Pointe and establish her own medical practice, or join a health care entity which competes with Huron Pointe, the Physician's departure would jeopardize Huron Pointe's legitimate

professional and business interest.

7.02 The Physician agrees that during the term of the Agreement, the Physician will not participate or engage in, directly or indirectly, any other medical practice, professional activity or business of any kind or nature whatsoever, which in the reasonable opinion of Huron Pointe conflicts with the duties and responsibilities of the Physician under this Agreement, without the prior written consent of Huron Pointe.

7.03 The Physician also agrees that upon the expiration or earlier termination of this Agreement (other than terminated by the Physician pursuant to subsection 5.02(b) above), the Physician shall not practice medicine in any form or capacity, at any location within a radius of fifteen (15) miles of the each Practice location for a period of two (2) years. The Physician further agrees that if the Physician's employment ends for any reason or in any manner, whether or not the Physician practices within the geographic area described in the preceding sentence, the Physician will not, either before or for a period of one year immediately following the end of the Physician's employment: (a) solicit for treatment any former or existing patient ( or member of any patient's household) of the Practice; (b) induce or attempt to influence any employee or patient of the Practice to terminate his or her relationship with the Practice; or (c) induce or attempt to influence any hospital, other health care facility and physician or any other professional with a referring relationship with the Practice to terminate that relationship.

7.04 The Physician acknowledges the restrictions contained in Section 8, to follow, are reasonable and necessary to protect legitimate professional and business interests of Huron Pointe, and that any violation of these restrictions would result in irreparable loss and injury to Huron Pointe. The Physician therefore agrees that in addition to any other remedies available to it, Huron Pointe shall be entitled to immediate preliminary and injunctive relief in the event of a violation of the restrictions contained in Section 8 without the necessity of Huron Pointe proving actual damages. The Physician further agrees Huron Pointe shall also be entitled to an equitable accounting of all earnings, profits, and other benefits arising from such violation.

7.05 If the restrictions contained in Section 8 are determined to be unreasonable by a court of competent jurisdiction, Huron Pointe and the Physician agree to the reformation of such restrictions by the court to the limits which may reasonably grant Huron Pointe the maximum protection permitted by applicable law in such circumstances.

## 8. INDEMNIFICATION

Huron Pointe will indemnify and hold the Physician harmless for all damages which the Physician may suffer as a result of the Physician's services provided under this Agreement and which is a result of the negligence of an employee or agent of Huron Pointe, other than the Physician; provided, however, the Physician shall promptly notify Huron Pointe of all claims asserted against the Physician (without regard to whether there has been any assertion or determination that the claim is the result of an employee or agent of Huron Pointe), Huron Pointe shall have the right to assume that Huron Pointe's cost to the defense or any portion of the defense of any such claim.

## 9. MEDICAL STAFF MEMBERSHIP / LICENSURE

The Physician is required to become and remain a member of the active medical staff of Lapeer Regional Hospital as provided in its Medical Staff ByLaws. It is expressly agreed this Agreement is subject to, and its continuation is dependent on, the Physician's membership on the active medical staff of Lapeer Regional Hospital, but the Physician will not have any automatic right to such medical staff membership under the terms and conditions of this Agreement. It is also expressly agreed that continuation of this Agreement is dependent on the Physician maintaining a good and valid medical license in the State of Michigan.

## 10. HURON POINTE LOYALTY

The Physician shall be obliged to promote and not denigrate the image of Huron Pointe as an outstanding provider of medical care and treatment. The Physician shall not make public or private statements to Huron Pointe employees, members of the medical staff of Lapeer Regional Hospital, or to the general public which would or could impugn or actually harm the image of Huron Pointe, except as required by applicable law. Violation of the foregoing shall be a breach of this Agreement. For purposes of this Section, however, a direct and confidential communication made in good faith to Huron Pointe's administration regarding the quality or efficiency of care rendered by Huron Pointe or at the Practice, made with the intent of improving the quality or efficiency of care rendered by Huron Pointe or at the Practice, shall not be considered to be in violation of this Section or in breach of this agreement.

## 11. PROFESSIONAL DISCRETION

Huron Pointe acknowledges that although the Physician is an employee, she has independent discretion to make all professional medical judgments relating to services provided to patients under this agreement. To that extent, and consistent with the terms of this Agreement, Huron Pointe will not control or exercise discretion over the manner in which the Physician practices her profession.

## 12. CONFIDENTIAL INFORMATION

The Physician agrees that all Confidential Information that comes into her possession by reason of her employment with Huron Pointe is proprietary to, and shall constitute trade secrets of Huron Pointe. The Physician shall not, during the term of this Agreement and thereafter, directly or indirectly disclose or acknowledge the content of any Confidential Information to any person other than an employee of Huron Pointe authorized to possess such Confidential Information. "Confidential Information " means all information relating to the operations of Huron Pointe which has not been specifically designated for release to the public by an authorized representative of Huron Pointe and includes, without limitation, patient information, business plans, marketing plans and materials, financial information and data, pricing information, methods of operation, and other similar information that was developed by or originated with Huron Pointe for its own use. On the expiration or earlier termination of this agreement, the Physician shall deliver all records, files, documents, and other tangible things containing any Confidential Information to Huron Pointe without making or retaining copies or notes of such Confidential Information.

## 13. CONFIDENTIALITY OF THE AGREEMENT

Neither Huron Pointe nor the Physician shall disclose to any person the terms or provisions of this Agreement without the other party's written consent, unless and to the extent required by law or unless such information has become generally known to and available for use by the public (other than as a result of the disclosing party's act or omissions to act).

## 14. MISCELLANEOUS

14.01   This agreement is governed by and construed in accordance with the laws of the State of Michigan and all applicable federal laws.

14.02   This Agreement is binding on, and is for the benefit of, the parties, their successors, and permitted assigns, and is not for the benefit of any other person or entity, including, but not limited to, patients and their representatives. Neither this Agreement nor any of the duties or obligations under this Agreement may be assigned by either party without the express written consent of the other. Notwithstanding anything to the contrary in this Agreement, Huron Pointe may assign this Agreement without the written consent of the Physician to any affiliated or related entity or organization of Huron Pointe.

14.03   All Section headings in this Agreement have been inserted for convenience only and do not interpret or limit the scope, extent or intent of any provision of this Agreement.

14.04   This Agreement, together with its exhibit(s), supersedes and terminates any and all prior agreements, contracts, understandings and the like between the parties and contains the entire agreement of and between parties with respect to the subject matter of this Agreement. This Agreement may not be changed orally; it may be changed only by an agreement in writing signed by both parties. Without limitation, Sections 7, 11, and 12 shall survive the expiration of earlier termination of this Agreement.

14.05   All notices and other communications provided for in this Agreement will be in writing and may be delivered personally, by telefax, by certified mail, return receipt requested, or by overnight delivery service, directed to the address shown below, unless a notice of a change of address is furnished to the other party as provided in this subsection.

PHYSICIAN:                                              HURON POINTE OB-GYN, P.C.:

                                                        GARY M. RITTEN, M.D., F.A.C.O.G.
1254 N. MAIN STREET                                     1254 N. MAIN STREET
LAPEER, MICHIGAN  48446                                 LAPEER, MICHIGAN  48446

14.06   If any term, covenant, condition or provision of the Agreement is deemed illegal or the application thereof to any person or in any circumstance shall to any extent be invalid or unenforceable, the remainder of this Agreement or the circumstances other than those with respect to which it is illegal, invalid or unenforceable will not be affected

thereby, and each term, covenant, condition and provision of this Agreement will be valid and enforceable to the fullest extent provided by law.

14.07   The waiver by either party of a breach of any term or provision of this Agreement will not operate as a waiver of a subsequent breach of the same provision by either party or of a breach of any other term or provision of this Agreement.. The delay or failure of a party to provide notice under this Agreement will not constitute a waiver by such party of any breach under this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first written above.

WITNESSES:                          HURON POINTE:

                                    HURON POINTE 0B-GYN, P.C.

_____   By: _____
                                    GARY M. RITTEN, M.D., FACOG
                                    Its:   President


                                    PHYSICIAN:


_____      ██████████████████████████████

1580

# EXHIBIT A

## HURON POINTE OB-GYN, P.C.

### PHYSICIAN - EMPLOYEE BENEFIT PACKAGE

The full time physician-employee will also receive the following benefits which are subject to the terms and provisions of applicable policies or plans in effect at the time of utilization. The part time physician-employee shall receive benefits accrued pro rata.

**COMBINED TIME OFF:** 24 days per year that accrue at .093 per hour for the first five years; (20 vacation/conference and 4 paid holidays).

**EXTENDED LEAVE BANK:** One 8 hour day is accumulated for each 173 hours worked. The maximum accrual is 288 hours. This is for use for long term illness. The bank is used after the first 10 days of illness being charged to the combined time off bank paid.

**LIFE INSURANCE:** $150,000 term life insurance up to age 65.

**SHORT-TERM DISABILITY INSURANCE:** Pays 60% of salary for up to 180 days.

**LONG-TERM DISABILITY INSURANCE:** Pays 66-2/3% of salary up to a designated maximum of one year of disability, after a 180-day waiting period.

**MEDICAL INSURANCE:** Huron Pointe provides health insurance premium of carrier of its choice; Physician pays cost if alternative carrier is selected.

**DENTAL INSURANCE:** Provided by Huron Pointe Ob-Gyn, P.C.

**VISION INSURANCE:**   100% of prevailing and customary charges for medical eye exam and lens; contact lens $225; frames $45, both every 24 months.

**SAVINGS:**   Huron Pointe will be setting up a tax deferred annuity for all employees beginning March 1, 2001.

**FUNERAL LEAVE:**   Three days per occasion for immediate family.

**JURY DUTY:**   Huron Pointe pays the difference between jury pay and daily compensation.

**PENSION:**   Plan to be set up in conjunction with savings retirement to be set up in March. Physician will have input into choosing options for investments and plans.

REVISED: 2/19/02 rlw